**UNITED STATES DISTRICT COURT**
**For the**
**DISTRICT OF RHODE ISLAND**

2021 JUL -7 P 1: 20

Petitioner,

CARLINE VILBON

VS.

CASE No. 1:21-cv-00267-MSM-LDA

Respondents,

Kevin Aucoin, Director of Department
Of Children, Youth and Families
101 Friendship Street, Providence, RI. 02903

Doctor Timothy Babineau, President and
CEO for The Lifespan Facilities,
593 Eddy Street, Providence, RI. 02903.

Arthur Mercurio, Director of Residential
Services for The Rumford House
2 Farrell Place, Rumford, RI. 02916

---

## DEFENDANTS AMENDED EXPARTATE PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO THE UNITED STATES CODE 28 U.S.C. § 2254, THE CODE OF FEDERAL REGULATIONS , 25 C.F.R. § 11.404, THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

Pursuant to the United States Code 28 U.S.C. § 2254 the Code of Federal Regulations, 25 C.F.R. § 11.404, the Fourteenth Amendment of the U.S. Constitution – Right to Due Process and Equal Protection, I, Carline Vilbon, the Plaintiff, Petition this honorable Court for issuance of Writ of

Habeas Corpus for my son Altamir A. Vilbon, who has been unlawfully detained by the Department of Children, Youth and Families and the following Lifespan facilities; Hasbro Children's Hospital, Bradley Hospital, and Rumford House group home.

As ground, I state the Following:

This petition was initially filled On January 8, 2021 at the Rhode Island Family Court on behalf of my son Altamir Vilbon, in response to a neglect complaint filed by the Department of Children, Youth and Families, but the Court did not grant me a full hearing on this matter. Aggrieved by the Family Court's decision, I appealed to the Rhode Island Supreme Court, and was denied a hearing on this matter as well See attached Supreme Court Order as Exhibit "A".  I have exhausted all procedures at the state level. Therefore I the Plaintiff respectfully request this honorable Court for an order issuing this Writ of Habeas Corpus of my son for good cause.

## **FACTUAL BACKGROUND**

On September 18, 2020, Hasbro Children's Hospital placed an unlawful 72 hour hold on my son Altamir A. Vilbon, or "Alex" in violation of RI GL **§ 40-11-5,** which also violates **25 C.F.R. 11.404,** because Altamir had been admitted  at the Hasbro Hospital since August 17, 2020, and during that time and never, did I cause any harm or injury to my son.

- Hasbro refused to release Altamir back to me, his legal guardian, unless I signed a falsified medical record which is indicative of child abuse.

- Hasbro Children's Hospital unlawfully detained Altamir since September 17, 2020, on his discharge date, because I refused to sign a discharge summary, which was forged by Hasbro to avoid liability for physically and chemically abusing him.

- Because I refused to sign Hasbro's forged document, Hasbro Children's Hospital and their affiliates, the Rumford House and Bradley Hospital, have since unlawfully detained my son Altamir, and unjustly placed him to the Department of Children Youth and Families (DCYF) Custody by false complaints and unlawful procedures.

- Hasbro Children's Hospital and their affiliates, the Rumford House and Bradley Hospital, have been working constructively to institutionalize Altamir without providing effective treatment to him, and have prevented him from receiving care from his health care providers in order to gain full control in forging medical records to institutionalize him.

- Hasbro Children's Hospital and their affiliates, the Rumford House and Bradley Hospital have filed, a Certification complaint in the Rhode Island Family Court to institutionalize Altamir indefinitely, in order to prevent liability for traumatizing him for their unlawful commitment in violation RI GL **§ 40-11-5,** The DRAFT ACT **§ 2-3** and forth. See Motion to Stay and Certification hearing docket entry 12/22/20 as Exhibit " B " .

*.On December 22, 2020, the day of the Certification hearing, which I opposed in the Family Court, the Certification complaints was withdrawn. The Bradley Hospital staff fraudulently induced Altamir into signing a voluntary admission form under undue influence, a month after his admission and transfer from Hasbro Children's.

- From September 17, 2020 through October 28, 2020 Hasbro Children's Hospital punished Altamir by constantly and frivolously restraining him physically, chemically by tranquilizing injections, secluding and isolating him from his family. Altamir's behaviors were worsened as a result of their harmful and deceptive practices. Due to the

harm done to Altamir by Hasbro Children's Hospital and their affiliates, the Rumford House and Bradley Hospital, have  diagnosed him with adjustment disorder.

\*. The staff at Hasbro Children's Hospital have started to harass me persistently, since the Spring of 2020, that I made numerous complaints to their administration, and even got a letter of apology from them. See Hasbro's letter of apology as Exhibit  "C".
 The staff at Hasbro Children's Hospital tried entrap me and frame me for neglect during the Summer of 2020, as I was trying to remove my son from Hasbro's care. See email complaints about Maggie the Pace Clinic secretary, who scheduled my son for an appointment without my knowledge as Exhibit "D".

- Altamir remains at risk of further harm and retaliation, if he is not removed promptly from their care.

- Altamir A. Vilbon was raised by me, and has resided in our stable home at 74 Prince Street, Pawtucket, Rhode Island. 02863 since birth. This is the home where Altamir is most familiar and where he has been nurtured by me, and I provided care that suits his medical, emotional and educational needs.

- In caring for Altamir, I have met the requirements of all of his healthcare providers from the time he was born. The following filed certified medical Records of Altamir's healthcare providers: (a). Blackstone Valley Community Health Center, (b) Boston Children's Hospital as well as (c) Hasbro Children's Hospital, (d) Performance Physical therapy, (e) a note from the Quality Behavioral Health, which states that Altamir was seen, per BCH's recommendation upon Altamir's discharge and a note pending from

Altamir's psychotherapist, which prove that I have not been neglectful medically to Altamir, until Hasbro's unlawful detainment of my son.

- Altamir's medical conditions have worsened by Hasbro's harmful and deceptive practices.

- It is in the best interest of Altamir A. Vilbon to return to me and his stable home, which he has known from birth.

## CUSTODY

1. As a result of the stated unlawful procedures and violations, on September 21, 2020, the Rhode Island Family Court has placed Altamir A. Vilbon in the temporary custody of the DCYF

2. The DCYF investigator or CPI conducted an unjust and fraudulent investigation in violation of DCYF's Rules of Ethics, investigation policies, and RI GL **§ 36-14**, which permitted the Hasbro Children Hospital to unlawfully detain my son Altamir. All prior complaints to DCYF had been resolved with the necessary documents I provided by having met all necessary standards of care. In their investigation, John Barletta, the child protective investigator (CPI) for the Department completely disregarded the proof I gave him to clear prior allegations of neglect by the Hasbro Children's Hospital, but accepted their false reports which was used to file the frivolous Medical Neglect complaint against me. See the Emails that I sent to John Barletta the CPI as Exhibit "E".

3. The DCYF failed to perform their duties pursuant to RI GL **§ 45-72-2(1)-(2)** by not acting in Altamir's best interest in allowing the Respondents to deprive him of proper medical and psychiatric care by supporting the harmful medical decisions of the Defendants who prevented Altamir of being evaluated and transferred to another hospital for proper treatment, and aided the Respondents to discontinue treatment of Altamir's medical providers and specialists. See my email conversations with Tia Sae Eung the DCYF social worker dated 10/13/20 regarding this issue, as EXHIBIT " F". **And When I requested that Altamir not be transferred to another Lifespan placement to prevent inaccurate medical records and ineffective treatment associated with conflict of interest**, as EXHIBIT "G".

4. On December 3, 2020, John Barletta, the DCYF'S PCI mailed me a decision with a forged date, to prevent me from appealing the DCYF's decision, which I timely requested and obtained another person's signature for the decision's approval, other than his supervisor Lisa M. D'Antonio.  See the forged letter and original decision letter as well as requests for appeal in EXHIBIT "H".

5. On or about November 19, 2020, I reported to DCYF's hotline that Altamir was being neglected at the Rumford House, which did not enroll him in school for three weeks after he was admitted at the Rumford House. But the DCYF took no action against the Rumford House group home, who they license, but blamed me for that academic neglect, and medical neglect cause by the Rumford House in DCYF's Motion to Modify Visitation in Docket entry 12/15/20, as Exhibit "I", and "Exhibit #1. But the Rumford House intentionally

prevented Altamir from receiving treatment from his medical care providers

and psychotherapist. See my email conversations with Tia SaeEung DCYF

social worker dated 10/28/20 THROUGH 10/29/20 as EXHIBIT "I" and my

email conversations with Guardian Ad Litem dated 11/09/20 as EXHIBIT "J".

and text conversation with Lynn, the charge nurse at the Rumford House as

EXHIBIT "K".

## **TANGIBLE AND UNDENIABLE FACTS**

On September 15, 2020, a meeting was held at the Hasbro Children's Hospital with the DCYF

PCI John Barletta, and two other physicians, which I also attended. John Barletta invited me to

join the meeting. During that meeting, I stated that Altamir reported that he had been physically

and chemically restrained, frivolously while he was admitted on the medical floor at Hasbro.

RETALIATION AND FALSIFICATION OF MEDICAL RECORDS: On September 17, 2020,

Altamir's discharge date, I discovered that Altamir's medical records were forged, to admitting

diagnosis of "Parent-child conflict" and secondary diagnosis of "Suicidal ideation".  Altamir's

Discharge Summary, was falsified in violation of **8 U.S. Code § 1324c, 49 CFR § 1570.5 and**

**retaliatory for reporting physical and chemical restraint which Altamir suffered on**

**09/15/20, and which to make me appear abusive, and directs their liability on me for**

**Hasbro's wrongful practice.** Therefore I refused to sign the discharge summary in preserving

the right to not incriminate myself. See Exhibit "Z" for the actual admitting diagnosis from the

Hasbro emergency department's report. The discharge documents which contained the forged

diagnosis was removed from Altamir's record, But a nurses note in Altamir's medical records

described the incident and states that the information was removed or altered.

## **FALSIFICATION  AND ALTERATION OF MEDICAL RECORDS**

- I have recently discovered that Hasbro removed Alex's Discharge Summary from his medical records which was falsified from the record that I requested. But I found information  about the events of Alex's detainment in a Nurse's notes. **See Exhibit "5".** I knew nothing about this until  February 26, 2021, when I picked-up Alex's medical records from Hasbro.

  On Fraud and Intentional Falsification of Records - 49 CFR § 1570.5 provides that:
  " No person may make, cause to be made, attempt, or cause to attempt any of the following:

  - Any fraudulent or intentionally <u>false statement in any record</u> or report that is kept, made, or used to show compliance with the subchapter, or exercise any privileges under this subchapter

  - Any reproduction or <u>alteration</u> , for fraudulent purpose, of any record, report, security program, access medium issued under issued under this subchapter or pursuant to standards in this subchapter.

  Therefore, Hasbro's falsification of admitting diagnoses, in Alex's medical records, and the alteration  were also intentional.

  According to the False Claims Act, an entity who falsifies medical records, is liable for any injury that arises out of falsification.

1. UNLAWFUL DETAINMENT AND 72 HOUR BED HOLD:  After I refused to sign Altamir's discharge summary, I called him to verify whether he reported that we had any

conflict with, and he denies making such report.  Altamir became very upset and wanted
to leave immediately, but was unable to do so, because he was held by the Hasbro
Children's Hospital. Because Hasbro would not release Altamir, unless I signed the
forged document, I requested for Altamir's transfer to another hospital for further
evaluation, because it was clear that he was developing a crisis, and had experienced a
change in condition which resulted in worsening of his psychological state  until now.
But Dr. Baron and Dr. Patel refused to transfer him.

1. To ensure his safety, I made two 911 calls to the Providence police, and requested a
   wellbeing check on Altamir. See Providence Police report dated 09/17/21 as Exhibit "L".
   Two of the Police officers met me at Hasbro's lobby and told me that Hasbro is refusing
   to transfer Altamir to Boston Children's Hospital.
   I also made many calls to United Health Care and to Altamir's primary care physician, at
   Blackstone Valley Community Health Center who were willing to help facilitate
   Altamir's transfer, but the doctors at Hasbro refused to transfer my son, but kept him,
   abused him physically and chemically by injections several tranquilizer shots in him, to
   keep him quiet, that he slept all afternoon and through the night, made inaccurate
   documents on his record, in stating that they administered Benadryl by mouth instead of
   intramuscularly.

2. On September 18, 2020, the staff at Hasbro learned that I had been inquiring about
   Altamir during the night 09/17 to 09/18/20, I spoke to Georgia, Altamir's nurse who read
   his nurses notes to me. Then, Hasbro staff started to document physical and chemical
   restraints on Altamir that are inconsistent with previous events. On September 17, 2021,
   Hasbro placed Altamir on an illegal 72 hour bed hold, in violation of RI GL **§ 40-11-5,**

which also violates **25 C.F.R. 11.404**, and prevented me from speaking to my son for approximately six weeks, by putting Altamir on phone restrictions, and claiming that I am the one who caused his trauma.

I also learned that Altamir received injections again during the day on September 18, when I called the following night and spoke to his nurse who worked 11-7 from 09/18 to 09/19/20.

ISOLATION, SECLUSION, PERSISTENT PHYSICAL AND CHEMICAL RESTRAINTS USED AS PUNISHMENT: From September 17 through October 29, 2020, Hasbro Isolated Altamir from me, whom he refers as his emotional support. Hasbro prevented me from speaking and visiting my own son, while they inflicted trauma on him, and illegally committed him to their psychiatric unit in violation of RI GL **§ 40-11-5** and , 25 C.F.R. 11.404, and in violation of the following Lifespan Patients Rights Policy:

<u>Freedom from restraints and seclusion that are not medically necessary or that are used as a means of coercion, discipline, convenience, or retaliation by staff</u>

<u>•The presence of someone whom you choose to give you emotional support, and visits from people you choose, unless it interferes with others' care or your own</u>

<u>•Kind, safe and respectful care</u>.


3. . I received shift reports three times a day from Hasbro's nurses stating that Altamir was restrained physically and chemically at least three times a day, for many hours, and placed on seclusion. During that time, Hasbro also prevented Altamir from speaking to my brother, who attempted to keep in touch and support him during his time of crisis. I reported these isolation events to Hasbro's administration by email On October 16, 2020,

due to the life threatening conditions that Altamir was experiencing, I reported my concerns about Altamir's mistreatment at Hasbro to the Guardian At Litem,  and requested that he be removed from Hasbro's care, as he was at an increased risk of irreparable harm, in email dated 10/07/20, as EXHIBIT "M".

From September 17 through October 28, 2020, Hasbro Children's Hospital declined my request to transfer Altamir from Hasbro to another facility, for appropriate care and evaluation, after four attempts, in violation of my parental and constitutional rights, and the following Lifespan Patient Transfer Policy:

Patient transfers to another facility will adhere to the following guidelines:

1.  a. Patients shall be admitted for the treatment of any and all conditions and diseases for which the Hospital has facilities and personnel. When it is determined, based on the patient's assessed need and the Hospital's capabilities, that the transfer of a patient to another facility is in the patient's clinical best interest, <u>or when a request for a transfer arises from a patient or family member's request, the Hospital and/or the attending physician shall assist the patient in making arrangements for care at another facility as long as the patient is sufficiently stable for transfer</u>.

     Dr. Patel, the psychiatrist at Hasbro Children's Hospital refused my  requests for transfer after four attempts. See complaints to Hasbro administration in emails as Exhibit "N".

CONSPIRACY FOR INDEFINITE COMMITMENT:

1.  Hasbro Children's Hospital admitted Altamir and kept him under observation for five days, which is three days above what the insurance companies allow under Altamir's

circumstances,  That length of hospitalization is not medically justifiable because Altamir did not exhibit any behavioral problems. During that time,  I informed the doctors that Altamir was very uncomfortable in a confined space and was put at risk of developing a crisis, which would have caused him to be committed by Hasbro's staff. Yet, Hasbro refused Altamir's timely discharge, but instead placed many calls to the director of the Rumford House and asked if they were going to take him back, even though the staff at the Rumford House, including the social worker Adam,  had no objections about taking Altamir back. Hasbro influenced the Rumford House's decision to not accept my son, if he were to have another panic attack.  And he was not violent. From that time, the conspiracy to commit Altamir indefinitely, continued to materialize. See my email conversation with to the Guardian At Litem in Exhibit "O".

2.  The Rumford House prevented Altamir from being treated by his medical providers and his psychotherapist, disobeyed the order of Dr. Sinsevere, his epileptologist, who prescribed further orders for Altamir, after a recent hospitalization at BCH in November of 2020 See my email conversation with to the Guardian At Litem and text conversations with Lynn the nurse at the Rumford House in Exhibit "P".

3.   During Altamir's admission at Bradley Hospital in December 2020, a psychiatrist reported that Hasbro's affiliates, altered Altamir's medication regimen, and started prescribing medicine to him, without my consent, and that a medication which was prescribed by Dr, Patel, from Hasbro, attributed to the worsening of Altamir's condition. And the psychiatrist at Bradley hospital discontinued the medicine that was prescribed by Dr. Patel.

4. During Altamir's admission from 11/24/20 to 12/28/20, Bradley hospital filed a Certification Complaint at the Rhode Island Family Court, to have him committed indefinitely. See Docket entry 12/21/20, and my Motion to Stay Pending Appeal in Exhibit "B".

5. Prior to Bradley Hospital's Certification Hearing, Altamir reported that he was being falsely accused of aggression See my emails conversation with the Guardian At Litem in Exhibit "Q". Altamir reported that he was being wrongfully and frivolously restrained physically and chemically.

6. Prior to Bradley Hospital's Certification Hearing, Altamir reported that he was being bullied by another patient, and because the staff did not intervene, he started expressing rage. See my emails conversation with the Guardian At Litem in Exhibit "R".

7. Prior to Bradley Hospital's Certification Hearing, Altamir reported that he was being distorted by corrupt teaching See my emails conversation with the Guardian At Litem in Exhibit "S".

8. Prior to Bradley Hospital's Certification Hearing, Altamir requested help from the Guardian At Litem and the CASSA social worker, in transferring out of Bradley hospital to another facility for proper treatment, but his wish was not granted See my emails conversation with the Guardian At Litem in Exhibit "R" and Exhibit "S".

9. On the evening of Bradley Hospital's Certification Hearing, Altamir reported that the staff at the Bradley Hospital fraudulently induced him into signing a voluntary admission form, which he initially refused, one month after being admitted. Altamir requested to

rescind that voluntary admission after I informed him of the  Certification complaint which Bradley See my emails dated 12/22/20 to Tania Bradley Hospital's social worker as Exhibit "T" .

10. ALTAMIR WAS RETRAUMATIZED AT THE RUMFORD HOUSE: Upon discharge from the Bradley Hospital on December 31, 2020, Altamir was readmitted to the Rumford House and place on isolation on ground of quarantine. Altamir expressed extreme discomfort from this isolation, and that a staff name Sotona was causing him undue pressure which led him to escalate, and causing him to be physically restrained on January 1, 2021. Sotona also started to put demands on me, in disregard of Altamir's stressors and mental status change caused by the undue pressure she put on Altamir. Sotona has caused a great deal of distress to Altamir, and shows a continuation of a similar incidents caused by Lynn a nurse who caused Altamir's previous admission at Hasbro Children's Hospital. I reported this incident to Lisa, a charge nurse at the Rumford House and ask that Sotona not care for Altamir, and that the staff be respectful of Altamir's Patient's Rights See Text messages dated 01/01/21 as Exhibit "U",

11. On January 3, Altamir continue to show signs of mental breakdown and trauma, as he reported being slammed to the floor by a male staff named Frosty. Altamir stated that Frosty slammed him because Altamir offended him.

## ALTAMIR WAS IN IMMINENT DANGER AND AT RISK FOR IRREPARABLE HARM

On January 11, 2021, I called the Rumford House to inquire about Altamir, after I noticed he was

not calling me for a few days, the charge nurse Lynn lied to me, in telling me that she tried to

call and left messages that Altamir had been on restraints and isolation, for most of the day, and

when I requested to speak to my son, she quickly hung up. Out of concern for Altamir's safety,

given the history of that nurse being dishonest, and triggering Altamir's behavior and

hospitalization, I called the Bradley hospital's supervisor Ray, and requested a well-being check

on Altamir. I received no return calls from Lynn on that day. But Ray called to tell me that he my

son was okay, but was having some issues. Lynn and the other staff failed to call me to intervene

in Altamir's crisis, as previously ordered.

On the Following day I received a call from Hasbro ED stating that Altamir had been transferred

for suicidal attempt, which Altamir told me was triggered by the staff, who were allowing two

residents to bully him, did not intervene, but instead restrained him and isolated him for two

consecutive days.

This has been a pattern of retaliation which has escalated during the discovery stage at the

Family Court, and increased where Altamir condition worsened whenever he returns to the

Rumford House. This has also been orchestrated by the Lifespan Facilities and Hasbro's

affiliates. Altamir was at an increased risk of imminent danger and loss of his life.


**WHEREFORE:** I request an immediate removal of Altamir from the respondent's custody back

to my care

## READMISSION AT THE BRADLEY HOSPITAL

Altamir  was transferred and readmitted at the Bradley Hospital.  On Jan20, Atlamir reported that

he  was  being  mistreated  was  physically  restrained  and  put  in  seclusion  without  adequate

justification, which caused him bodily harm. When I attempted to address his concerns, most of the staff nurses have shown no regards for Altamir's wellbeing in correcting the Issues that are causing him distress. And on two occasions an employee at Bradley Hospital snatched the phone, while he was speaking to me, to keep him from describing the mistreatment that he was experiencing. Altamir continued to express hopelessness and sadness due to the traumatic experience that he has had, as a result of the unlawful detainment and mistreatment of the Lifespan facilities **See** emails dated 01/20/21 and forth as EXHIBIT "V".

On January 21 and 22, Altamir reported that his mattress was taken away by the staff and not returned until night time. As a result, he was unable to rest or take a nap. During that time, Altamir expressed that he became weary because of his traumatic experience. He was deprived of adequate rest by the staff of Bradley Hospital.

On January 20, Bethany Parker, the CASA social worker informed me that Bradley Hospital plans to transfer Altamir back to the Rumford House, where Altamir had been severely mistreated and causing him to attempt suicide. This incident lead me to file my Second Amended Expartate Writ of Habeas Petition (Docket entry 01/08/21).

To prove that Altamir was in fact unlawfully detained by Dr. Baron at Hasbro Children's Hospital, as I submitted in my Opposition to Hasbro Children's Hospital's Motion to Quash (Docket entry 01/14/21). Dr. Baron's typed report on Neglect As Exhibit "W",  as well as Dr. Baron's hand written report in Exhibit "X" , which was filed by the DCYF, in support of their Expartate Neglect Petition, as well as **.** In the DCYF Case Activity Notes dated 09/17/20, by Dr.

Baron, and 09/19/20 by me Carline Vilbon,  which the describes the events that lead to Altamir's

unlawful detainment, when I reported to the DCYF's hotline, which was included in the DCYF's

neglect petition as Exhibit "Y", and the actual admitting diagnosis of Altamir by the Hasbro

Hospital E.D, doctor is Exhibit "Z".


2.  Dr. Barron violated RI. GL **§ 40-11-5,** and **25 C.F.R 11.404,** by detaining Alex.

> **" The essence of an action for false imprisonment is the restrain of another**
>
> **Without legal justification" Webbier v Thoroughbred Racing Protective Bureau.**
>
> **Inc 105 R.I.605, 613, 254 A.2d 285, 290 (1969).**

 <u>Medical Neglect</u>: Altamir was hospitalized on November 1 through 2, 2020 at Boston

Children's Hospital (BCH), while in custody of the DCYF and in the placement at the Rumford

House, a DCYF's representative received discharge instructions from BCH. Neither DCYF nor

the Rumford House followed any of the instructions, which include a follow-up visit with

Altamir's specialist and other primary care providers. See Boston Children's Hospital medical

records in Docket Entry 01/07/21 and the modified clinical notes of BCH medical record dated

01/07/21, as Exhibit " #1", and the modified clinical notes of BCH dated 01/13/21, as Exhibit

"2", which also demonstrate the Rumford House's willful neglect in causing Altamir to miss his

appointment with Dr. Sansevere, and the Lifespan facilities numerously changed Altamir's

medication regimen, without his specialist's consent or mine. But the DCYF blamed me for Its

failure to provide the necessary care for Altamir in their Motion to Modify Mother's Visitation

(Dockt entry 12/15/21) as Exhibit "3", which I also opposed in a Motion for Protective Order

(Docket entry 01/11/21) as Exhibit "4".

WHEREFORE,  I urge this honorable Court to grant the following relief:


(1) To expedite Its issuance of my Writ of Habeas Corpus petition,  for the release of Altamir

A. Vilbon back to me, so that I may seek prompt and effective care and to prevent further

harm to him; And that the Plaintiff and Respondents are in violation of the American with

Disability Act, which prohibit such practices


## **Claims for Relief**


STATUTORY  and CODE of FEDERAL REGULATION  VIOLATION

My child has been unlawfully detainment, in violation of the United States Federal Code of

Regulation **25 C.F.R. § 11.404,** the Rhode Island General Laws **§ 10- 9,** RI GL **§ 40-11-5**  the

**Draft Act, and abuse of process and Rule 11**, caused by Hasbro Children's Hospital and their

affiliates, Bradley Hospital and the Rumford House and the DCYF, and for submitting. False and

misleading evidence in Family Court. In addition, the DCYF violated the Fourteenth

Amendment of the U.S. Constitution, by depriving my right to due process in appealing their

multiple neglect charges.


Those institutions have caused tremendous harm to Altamir, in depriving him of his right to

liberty,  and due process, which  inflicted emotional distress and induced psychosis upon him.

The actions of the stated Lifespan facilities mentioned above  are unconstitutional and are in

gross violation of Altamir's civil rights.

In addition to the stated violations, the misconducts staff members of the Hasbro Children's Hospital, Bradley Hospital and the Rumford House have intentionally worsened Altamir's medical and psychiatric conditions for profitable gain. Altamir remains at risk of harm at the Lifespan facility, which has further planned to discharge him to another unknown facility, to prevent liability for their harmful and deceptive practices.

AMENDMENT:  On or about June 20, 2021 Altamir left the Jenks Middle school ground, unattended, and walked three blocks from the school alone, to ask for food at a convenience store, because he was not fed at the Rumford House. I have tried to address this issue since last February, but was told by the staff Sotona, that Altamir was put on a restrictive diet. They offered no solution to resolve Altamir's hunger, and this affected his safety, to the point of walking unattended, in search for food, which could have caused him irreparable harm, had he fallen while having a seizure.

WHEREFORE,  I the Plaintiff urge this honorable Court to grant the following relief:

(1) To expedite Its issuance of my Writ of Habeas Corpus petition,  for the release of Altamir A. Vilbon to come back to me, so that I may seek prompt and effective care and to prevent further harm to him;

(2) Grant me the Petitioner a writ of habeas corpus by directing the Respondents to immediately release the Petitioner from custody;

(3)Expedite the consideration of the actions of the  25 C.F.R. 11.404, 28 U.S.C. 2241,  28 U.S.C 2254.

(4) Enjoin the Respondents from their unlawful practices and to order sanctions against them

as deem just and proper.

Respectfully submitted,

Carline Vilbon

74 Prince Street
Pawtucket, RI. 02860
Ph: (401) 654-3470
Email: vilbonc@yahoo.com
**Dated:** July 6, 2021

# UNITED STATES DISTRICT COURT
## For the

## DISTRICT OF RHODE ISLAND

Petitioner,

CARLINE VILBON

VS.

Respondents,

Kevin Aucoin, Director of Department
Of  Children, Youth and Families
101 Friendship Street, Providence, RI. 02903

Doctor Timothy Babineau, President and
CEO for The Lifespan Facilities,
593 Eddy Street, Providence, RI. 02903.

Arthur Mercurio, Director of Residential
Services for The Rumford House
2 Farrell Place, Rumford, RI. 02916               CASE No. 1:21-cv-00267-MSM-LDA

## ISSUANCE OF HABEAS CORPUS PETITION  PETITIONERS  AMENDED EXPARTATE  PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO THE UNITED STATES CODE 28 U.S.C. § 2254, THE CODE OF FEDERAL REGULATIONS , 25 C.F.R. § 11.404, THE FOURTEENTH AMENDMENT OF THE UNITED STATES

YOU ARE HEREBY COMMANDED to bring the minor child, [Altamir A. Vilbon], by you unlawfully

detained, as is alleged, before the Court at _____ o'clock, on [ -- /-- /-- ], to be dealt with according to

the Rhode Island Law. IT IS SO ORDERED.

_____

Judge

# UNITED STATES DISTRICT COURT
## For the

## DISTRICT OF RHODE ISLAND

_____

Petitioner,                                         Case No.

CARLINE VILBON

Respondents,
Kevin Aucoin, Director of Department
Of Children, Youth and Families
101 Friendship Street, Providence, RI. 02903

Doctor Timothy Babineau, President and
CEO for The Lifespan Facilities,
593 Eddy Street, Providence, RI. 02903.

Arthur Mercurio, Director of Residential
Services for The Rumford House
2 Farrell Place, Rumford, RI. 02916          CASE No. 1:21-cv-00267-MSM-LDA

_____

## PETITIONER'S AMENDED EXPARTATE  PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO THE UNITED STATES CODE 28 U.S.C. § 2254, THE CODE OF FEDERAL REGULATIONS , 25 C.F.R. § 11.404, THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

I, [Carline Vilbon], being first duly sworn on oath, depose and state that I am the Plaintiff /
Petitioner in the above action; that I have read the above and foregoing Petition for Writ of
Habeas Corpus; and that the statements contained therein are true and correct to the best of my
knowledge and belief.


[Carline Vilbon], Petitioner,

74 Prince Street, Pawtucket, RI. 02860

Subscribed and sworn to before me this _____ day of _____2021

_____

Notary Public
My Commission Expires

# UNITED STATES DISTRICT COURT
## For the

## DISTRICT OF RHODE ISLAND

---

## CERTIFICATE OF SERVICE

I, the Plaintiff Carline Vilbon, have served, upon the Plaintiff' attorney a copy of the following:

    a.   PETITIONER'S  AMENDED EXPARTATE  PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO THE UNITED STATES CODE 28 U.S.C. § 2254, THE CODE OF FEDERAL REGULATIONS , 25 C.F.R. § 11.404, THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

    b.   Return of Summons In a Civil Action from the United States District Court for the District of Rhode Island

on  July 6, 2021, via electronic mail to attorney Benjamin Copple at benjamin.copple@dcyf.ri.gov ,Timothy Babineau  Lifespan CEO at ljugere@lifespan.org , and Arthur Mercurio, residential director of the Rumford House at amercurio@lifespan.org

Carline Vilbon
**Dated:** July 6, 2021