# Exhibit P

Saturday, November 14, 2020

Good morning Lynn

I forgot to tell you yesterday, that Alex had an order of Lorazepam 1 mg for anxiety and agitation but it has expired. It was prescribed by a psychiatrist at BCH.

Also, I had discussed with a doctor the Alex has alot of impulsivity mood problems.

If you have also made th

8:07 AM  View all  >

Also, I will request a copy of the Lorazepam order for you from the



8:07 AM

Also, I will request a copy of the Lorazepam order for you from the pharmacy. I might get it the same day.

8:18 AM

Thank you. We left you messages last night that Alex had to go to Hasbro ED for evaluation. I believe Adam left his number along with the doctor caring for Alex so you can get further info. I just want to make sure you were aware. Ty

2:43 PM

Wednesday, November 18, 2020


Good afternoon Lynn,

    



caring for Alex so you can get further info. I just want to make sure you were aware. Ty

2:43 PM

Wednesday, November 18, 2020

Good afternoon Lynn,

I'd like to remind you that Alex has the following appointments scheduled:

Performance Physical Therapy
with Makayla on tomorrow 11/19, at 1 PM
21 Division Street
Pawtucket RI

Thanks,

Carline

4:57 PM

# Exhibit Q

# RE: ALTAMIR HOSPITAL PLACEMENT

From:  Daigle, Diane (ddaigle@courts.ri.gov)

To:    vilbonc@yahoo.com; bparker@courts.ri.gov

Date:  Wednesday, December 9, 2020, 10:22 AM PST


Thank you Carline,  It was a pleasure meeting you this morning.  It always helps to put a face with a name, even if it is on a zoom call.  Anyone can see that you are a zealous advocate for your son.

You indicated that you had conducted an investigation involving some of your concerns and I would be interested in reviewing any items you have regarding that investigation that goes beyond your discussions with Alex, which we have already discussed.  As you are aware Bethany did have the SW and Doctor from Bradley join the call so that some of these issues could be discussed, however, you did not wish to discuss them with Bradley staff at the time of the call.  We certainly understood why you might want time to prepare and being respectful of that we scheduled a meeting next week to include Bradley.  My understanding from an email I just received from you is that you would not be attending the meeting.  I am not sure how to address your concerns without a meeting that involves Bradley Hospital, you, Alex and CASA.  If you would like to reconsider and have a meeting scheduled please let us know.


Thank you for your consideration.



Diane Daigle, Esq.

Staff Attorney

Office of the Court Appointed Special Advocate (CASA)

Garrahy Judical Complex

One Dorrance Plaza

Providence, RI 02903

Tele.: (401) 458-3344

Fax: (401) 458-3340

ddaigle@courts.ri.gov


NOTE: PLEASE DO NOT FORWARD THIS EMAIL TO OTHERS WITHOUT THE EXPRESS CONSENT OF SENDER.

Unauthorized interception is prohibited by Federal Law (Electronic Communications Privacy Act of 1986. 18 USC 2701(a) and 2702 (a))

This message is being sent by the Office of the Court Appointed Special Advocate ("CASA").  The message and any and all attachments is intended exclusively for the individuals and entities to which it is addressed.  This communication, including any attachments, may contain

information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, or an employee or agent responsible for the delivery of this message to the intended recipient, you are not authorized and strictly prohibited to read, print, retain, copy, or disseminate this message or any part of it. The taking of any action or the omission to take any action in reliance on the content of this message or any of the attachments by anyone other than the intended recipient is strictly prohibited. If you have received a copy of this message in error, please notify the sender immediately by e-mail and delete all copies of this message. This message is protected by applicable legal privileges and is confidential.

**From:** Carline Vilbon <vilbonc@yahoo.com>
**Sent:** Wednesday, December 9, 2020 1:01 PM
**To:** Parker, Bethany <bparker@courts.ri.gov>; Daigle, Diane <ddaigle@courts.ri.gov>
**Subject:** Re: ALTAMIR HOSPITAL PLACEMENT

Good afternoon attorney Daigle,

As stated in our Zoom meeting earlier, with Alex. There are discrepancies in communication and documents about my son records at Bradley hospital

One week ago, I reported to their nursing supervisor that my son was being g mistreated and frivolous restrained, physically and chemically.

Alex reported humorously that he was wrongfully restrained, when another patient attacked him, he was punished instead.

A staff wrongfully accused my son of hitting a female doctor, and on another occasion spitting at a nurse. My brother and I have investigated these so called incidents and found them highly inconsistent and incredible.

Additionally, Alex, reported today during our Zoom meeting that he is uncomfortable at Bradley and is not getting the help he needs. And therefore requested your support in helping him transfer to another hospital that is not affiliated with Hasbro.

Alex left the Zoom meetin before it ended out of frustration because he didn't feel that he was going to get the support he requested.

I contacted the court and verified that the next court date 12/18 is set for 2 pm via webex. I will address additional legal concerns at that time.

I will continue to advocate for my son's best interest.


Sincerely,

Carline Vilbon


On Friday, December 4, 2020, 11:44:47 AM PST, Daigle, Diane <ddaigle@courts.ri.gov> wrote:


Thank you Carline. Can you be more specific with what Altmir is saying he is being wrongfully accused of? As well as the inaccurate reports and records being added to his file?

Thanks,


Diane Daigle, Esq.

Staff Attorney

Office of the Court Appointed Special Advocate (CASA)

Garrahy Judical Complex

One Dorrance Plaza

Providence, RI 02903

Tele.: (401) 458-3344

Fax: (401) 458-3340

ddaigle@courts.ri.gov

NOTE: PLEASE DO NOT FORWARD THIS EMAIL TO OTHERS WITHOUT THE EXPRESS CONSENT OF SENDER.

Unauthorized interception is prohibited by Federal Law (Electronic Communications Privacy Act of 1986, 18 USC 2701(a) and 2702 (a))

This message is being sent by the Office of the Court Appointed Special Advocate ("CASA"). The message and any and all attachments is intended exclusively for the individuals and entities to which it is addressed. This communication, including any attachments, may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, or an employee or agent responsible for the delivery of this message to the intended recipient, you are not authorized and strictly prohibited to read, print, retain, copy, or disseminate this message or any part of it. The taking of any action or the omission to take any action in reliance on the content of this message or any of the attachments by anyone other than the intended recipient is strictly prohibited. If you have received a copy of this message in error, please notify the sender immediately by e-mail and delete all copies of this message. This message is protected by applicable legal privileges and is confidential.

**From:** Carline Vilbon <viibonc@yahoo.com>
**Sent:** Friday, December 4, 2020 12:56 PM
**To:** Parker, Bethany <bparker@courts.ri.gov>; Daigle, Diane <ddaigle@courts.ri.gov>
**Subject:** RE: ALTAMIR HOSPITAL PLACEMENT

Good afternoon,

Altamir reported some concerns about the staff and improper care at Bradley hospital.

He also stated that the staff are falsely accusing him. And I am concerned that inaccurate reports and documents have been added to his records as a result.

Altamir has asked that you call him on Harbor Unit at Bradley. Because he would like to express his concerns and request additional support from you.

He has tried to call you Bethany , because a doctor at Bradley gave him your number to call you, but he told me that he is being discouraged from calling you.

I have also requested a zoom meeting with you, the Bradley staff and Altamir, but have not heard back from anyone.

Altamir or Alex admitted at the Harbor Unit at Bradley hospital, and their number is (401) 432-1000

# Exhibit R

## Re: BRADLEY IS DISTORTING ALTAMIR

From: Carline Vilbon (vilbonc@yahoo.com)

To: ddaigle@courts.ri.gov; bparker@courts.ri.gov

Date: Tuesday, December 15, 2020, 09:22 AM PST


I am concerned that Altamir is being reprogrammed, because
Altamir has been around children with gender issues while at Hasbro, and has never been
as influenced to questions his own gender identity.
I will speak with him further to determine what happened, and what is influencing him.


Thanks,

Carline Vilbon


On Tuesday, December 15, 2020, 09:02:35 AM PST, Parker, Bethany <bparker@courts.ri.gov> wrote:


Good morning Carline.


Thank you so much for sending along your concerns. I can assure you that Bradley Hospital does not teach
children to disassociate with their genders. I believe what is happening is that there may be other children
on the unit who don't identify with a gender and that is where Alex is being exposed to it. I believe your years
of raising your child according to your proper values will not unravel within the short time he will be at
Bradley. I spoke with Alex a short time ago and he did not address any concerns or issues that he had and I
had to end the zoom call because he muted me and turned off my video. Please reach out if you have any
other concerns or questions!


Bethany


From: Carline Vilbon <vilbonc@yanoo.com>
Sent: Tuesday, December 15, 2020 11:45 AM
To: Daigle, Diane <ddaigle@courts.ri.gov>; Parker, Bethany <bparker@courts.ri.gov>
Subject: Re: BRADLEY IS DISTORTING ALTAMIR


EXTERNAL EMAIL: Do not click any links or open any attachments unless you trust the sender and know the
content is safe.

Please contact Bradley to help resolve this issue.  Also Alex requested to speak to you.

Thanks,

Carline Vilbon

# Exhibit S

information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure.  If you are not the named addressee, or an employee or agent responsible for the delivery of this message to the intended recipient, you are not authorized and strictly prohibited to read, print, retain, copy, or disseminate this message or any part of it. The taking of any action or the omission to take any action in reliance on the content of this message or any of the attachments by anyone other than the intended recipient is strictly prohibited. If you have received a copy of this message in error, please notify the sender immediately by e-mail and delete all copies of this message.  This message is protected by applicable legal privileges and is confidential.

From: Carline Vilbon <vilbonc@yahoo.com>
Sent: Wednesday, December 9, 2020 1:01 PM
To: Parker, Bethany <bparker@courts.ri.gov>; Daigle, Diane <ddaigle@courts.ri.gov>
Subject: Re: ALTAMIR HOSPITAL PLACEMENT

Good afternoon attorney Daigle,

As stated in our Zoom meeting earlier,  with  Alex.  There are discrepancies in communication and documents about my son records at Bradley hospital

One week ago, I  reported to their nursing supervisor that my son was being g mistreated and frivolous restrained, physically and chemically.

Alex reported humorously that he was wrongfully restrained,  when another patient attacked him,  he was punished instead.

A staff wrongfully accused my son of hitting a female doctor,  and on another occasion spitting at a nurse. My brother and I  have investigated these so called incidents and found them highly inconsistent and incredible.

Additionally,  Alex, reported today during our Zoom meeting  that he is uncomfortable at Bradley and is not getting the help he needs.  And therefore requested your support in helping him transfer to another hospital that is not affiliated with Hasbro.

Alex left the Zoom meetin before it ended out of frustration because he didn't feel that he was going to get the secondly opportunity

I will continue to advocate for my son's best interest.


Sincerely,

Carline Vilbon


On Friday, December 4, 2020, 11:44:47 AM PST, Daigle, Diane <ddaigle@courts.ri.gov> wrote:


Thank you Carline. Can you be more specific with what Altmir is saying he is being wrongfully accused of? As well as the inaccurate reports and records being added to his file?

Thanks,


Diane Daigle, Esq.

Staff Attorney

Office of the Court Appointed Special Advocate (CASA)

Garrahy Judical Complex

One Dorrance Plaza

Providence, RI 02903

Tele.: (401) 458-3344

Fax: (401) 458-3340

ddaigle@courts.ri.gov


NOTE: PLEASE DO NOT FORWARD THIS EMAIL TO OTHERS WITHOUT THE EXPRESS CONSENT OF SENDER.

Unauthorized interception is prohibited by Federal Law (Electronic Communications Privacy Act of 1986, 18 USC 2701(a) and 2702 (a))

This message is being sent by the Office of the Court Appointed Special Advocate ("CASA"). The message and any and all attachments is intended exclusively for the individuals and entities to which it is addressed. This communication, including any attachments, may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, or an employee or agent responsible for the delivery of this message to the intended recipient, you are not authorized and strictly prohibited to read, print, retain, copy, or disseminate this message or any part of it. The taking of any action or the omission to take any action in reliance on the content of this message or any of the attachments by anyone other than the intended recipient is strictly prohibited. If you have received a copy of this message in error, please notify the sender immediately by e-mail and delete all copies of this message. This message is protected by applicable legal privileges and is confidential.

**From:** Carline Vilbon <vilbonc@yahoo.com>
**Sent:** Friday, December 4, 2020 12:56 PM
**To:** Parker, Bethany <bparker@courts.ri.gov>; Daigle, Diane <ddaigle@courts.ri.gov>
**Subject:** RE: ALTAMIR HOSPITAL PLACEMENT

Good afternoon,

Altamir reported some concerns about the staff and improper care at Bradley hospital.

He also stated that the staff are falsely accusing him. And I am concerned that inaccurate reports and documents have been added to his records as a result.

Altamir has asked that you call him on Harbor Unit at Bradley. Because he would like to express his concerns and request additional support from you.

He has tried to call you Bethany , because a doctor at Bradley gave him your number to call you, but he told me that he is being discouraged from calling you.

I have also requested a zoom meeting with you, the Bradley staff and Altamir, but have not heard back from anyone.

Altamir or Alex admitted at the Harbor Unit at Bradley hospital, and their number is (401) 432-1000

# Exhibit T

## RE: RESCISSION OF ALTAMIR'S VOLUNTARY FORM

From: Carline Vilbon (vilbonc@yahoo.com)

To: talmeida2@lifespan.org

Date: Tuesday, December 22, 2020, 07:02 PM PST

This evening, my son Altamir A. Vilbon who is admitted at the Bradley Hospital Bay unit told me that he signed a voluntary admission form, which he did not fully understand, and refused sign initialy, since his transfer from Hasbro Children's hospital in November 24. Altamir said that he was misled into sign it, and would like to rescind that form.

Please inform Altamir's concerns to your administration as soon as possible.

Thanks,

Carline Vilbon, mother of Altamir A. Vilbon

# Exhibit U

Saturday, January 2, 2021

Good morning Lisa,
This is Carline Vilbon,
mother of Altamir Vilbon,
or Alex. My son is a
patient at the Rumford
House, and you called
me recently regarding his
quarantine status.
I wanted you to be aware
that my son reported he
feels uncomfortable with
Sotona, a mental health
worker at the Ru

MMS          📄 View all
10:34 AM



I will pass along
your concerns to the
supervisor. Thank you
for letting me know          10:36 AM

Excuse the typos

(No subject)

Good morning Lisa,

This is Carline Vilbon, mother of Altamir Vilbon, or Alex. My son is a patient at the Rumford House, and you called me recently regarding his quarantine status.

I wanted you to be aware that my son reported he feels uncomfortable with Sotona, a mental health worker at the Rumford House, and that their relationship is not therapeutic nor supportive for him. This led to him to being restrained yesterday, because Sotona pressuring him to take a shower at approximately 7Pm, while he was waiting for a meal from home. Alex stated that he told Sotona many times that he did not want a shower, but she was puting too much pressure on him, that he escalated in an outburst, which caused him to be restrained. I am concerned that this is a continuation of mistreatment, which led to his recent hospitalization, when Lynn the charge nurse snatched a sentimental object from Alex, which I had given him, and sent him to Hasbro in restraints. This type of restraint is illegal. Also, when I called to check on Alex, Sotona snatched the phone from Alex, and began telling me that I brought Alex too much food, and that she was not going to allow him to eat the meal. And then she began to impose on me by telling me to speak to Adam the social worker. As much as I have tried to avoid conflict with and confusion with your staff, I

Copy text     Share

for letting me know          10:36 AM

Excuse the typos

As much as I have tried
to avoid conflict and
confusion with your staff,
I am beginning to feel that
the mistreatment that my
son has experienced is
10:44 AM   niw being directed at me.

Also, I am requesting that
Altamir be given a copy
Patient Rights in writing,
and for his rights as a
patient to be explained to
him, which includes the
right to refuse a shower.
I also ask that the staff
respect his rights.

Thank you,
Carline Vilbon

# Exhibit V

# RE: RE; ALTAMIR'S IS BEING MISTREATED AT BRADLEY HOSPITAL

From:  Parker, Bethany (bparker@courts.ri.gov)

To:    vilbonc@yahoo.com; ddaigle@courts.ri.gov

Date:  Wednesday, January 20, 2021, 11:08 AM PST

Hello Carline,

I want to fill you in what was reported by Bradley staff about the event that took place today. Bradley staff is reporting that Alex had made the telephone call to you without permission from staff. Per DCYF and the Court, your telephone calls and visits are to be supervised. With that said, he tried to circumnavigate the order and call you without supervision. Staff reported that after the telephone call was ended, Alex began biting, kicking, throwing things and became extremely aggressive. Because he was so aggressive, he was put in a restraint chair.

Staff reports that since Alex has been placed on CCAD unit, he has been participating in groups, socializing with peers and does not appear to be uncomfortable. In fact, staff reported that just yesterday Alex was in group, participating, when some children tired to antagonize him, to which he did not act. There doesn't appear to be as many behavioral incidents since being on the unit.

The goal is to have him return to Rumford House with the hope of involvement and buy into the program by you. The ultimate goal is to have him return home to you, but this may not be achievable if there is lack of involvement on your end.

Diane and I would like to have a meeting with you tomorrow via zoom if that is possible. We were looking at 10am. If this works for you, please let me know and I will set it up.

Please don't hesitate to reach out if need be! Hope to hear back from you!

> **From:** Carline Vilbon <vilbonc@yahoo.com>
> **Sent:** Wednesday, January 20, 2021 1:24 PM
> **To:** Daigle, Diane <ddaigle@courts.ri.gov>; Parker, Bethany <bparker@courts.ri.gov>
> **Subject:** Re: RE; ALTAMIR'S IS BEING MISTREATED AT BRADLEY HOSPITAL

EXTERNAL EMAIL: Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Thank you for your prompt response. I Although I did not want to speak to their doctor, as the nurse requested, I told her to communicate my concerns to the doctor. I forgot to add that It seems that a staff disconnected the call, to keep Alex from speaking to me. This is a similar incident to the problems that occurred at the Rumford House.

And Bradley put Alex in the wrong unit. he was not born with Autism. This diagnosis is an error, which was recently put in his record at Hasbro. That is also a conflict and discomfort for Alex. And I told the new social worker Kristen about Alex being placed on the wrong unit.


Also, the reason that I am not speaking with their doctors, is because I never agreed to this admission, or any other form of unlawful detainment, which is still in dispute. And they put Alex in the wrong unit. he


Carline Vilbon


On Wednesday, January 20, 2021, 10:05:19 AM PST, Parker, Bethany <bparker@courts.ri.gov> wrote:



Thank you for notifying us of the situation. I will be attending a meeting with Bradley in 10 minutes and will be sure to inquire about the incident and voice your concerns. I will fill you in when the meeting has ended.

Get Outlook for Android<https://aka.ms/ghei36>

———————————————————

From: Carline Vilbon <vilbonc@yahoo.com>
Sent: Wednesday, January 20, 2021 1:02:02 PM
To: Diane Daigle <ddaigle@courts.ri.gov>; Bethany Parker <bparker@courts.ri.gov>
Subject: RE; ALTAMIR'S IS BEING MISTREATED AT BRADLEY HOSPITAL

Good afternoon:

Alex just called me a few minutes ago, was very upset and wanting to speak to me about a conflict that he was experiencing. But before he even got a chance to speak, the call abruptly ended. Then I called the Cad unit and spoke to a nurse name Alisa, who told me that Alex was being held in his room by staff, because he was upset about something. But a few minutes later that same nurse called me and told me that Alex was in a restraint chair, but failed to state the circumstance that led to this event, and simply blaming everything on Alex. I told her that I would like them to call me as previously noted, so that I could intervene in a situation before it escalates to him being restrained. The nurse asked if I would like to speak to Alex's doctor, I said "no. and that it is standard medical practice to try all possible effective interventions, before applying restraints on a child". But she was not pleased with my concerns, as if I should accept any kind of mistreatment of my son, which will cause him to suffer and become aggressive.

This is unacceptable.

Carline Vilbon

# Exhibit B

RECEIVED

JAN 2 6 2021

FAMILY COURT
JUVENILE JUSTICE

Sony Vilbon

74 Prince Street

Pawtucket, RI. 0286

Dated: January 13, 2021

    I, Sony Vilbon, the uncle of Alexandre Altamir Vilbon, I spoke to him concerning the report that one of the staff member told my sister Carline Vilbon via a telephone conversation, and my nephew told me that two residents at the Hasbro hospital were bullying him; he reported such event to an employee yesterday, which led to his isolation in the family room. Altamir stated that took those residents outside of that facility. He sounded very depress and his voice has clearly proven so, and mentioned he was lonely. Consequently, Altamir was trying to hurt himself.

Respectfully submitted,

*Sony Vilbon*
Sony Vilbon

*[signature]*

1/1/22

*[signature]* P. *[illegible]*
ADMINISTRATOR CLERK

TRUE COPY ATTEST

PAUL LAUGHLIN
NOTARY PUBLIC
ID # 764816
STATE OF RHODE ISLAND

RECEIVED

JAN 13 2021

FAMILY COURT
JUVENILE JUSTICE

Plaintiff,
Department of Children
Youth and Families

DOCKET NO. PJ20-002943

vs.

Defendant
    Carline Vilbon

## ALTAMIR'S CARE PLAN UPON RETURN HOME

    This care plan is individualized to manage Altamir's medical and psychological conditions, as well to meet his educational and emotional needs. Previously established routines and interventions will be maintained, until further evaluation by his healthcare providers and for continuity of care.

## PLAN

The goal is to restore normalcy,

    a.  Return Altamir to his stable home environment

    b.  Gradually resume previous routine and activities – School, Hobbies, house chores, reading, playing and recreational activities e.tc.

    c.  Form social support – trough Support Groups for children with disabilities

    d.  Reconnect with friends at social club "The Boys and Girls Club"

    e.  Rebuild emotional support – From family

    f.  Provide psychological support and treatment – From psychotherapist

g.  Encourage independence

## MEDICAL DIAGNOSES

1.  Epilepsy / Seizure Disorder ; intractable: - Medication will be managed by Dr Sansevere at Boston Children's Hospital with surgical consult as recommended

2.  Unspecified Developmental Disability – will receive treatment as ordered by the Boston Children's Hospital Developmental Medicine

3.  Left-sided hemiperesis , hemiplegia , left foot paralysis and weakness - Will return to Performance Physical Therapy for treatment

4.  Ambulation Impairment - Will perform 10 to 20 minutes walk outdoors daily to improve ambulation and perform home exercises prescribed by physical therapist.

## PSYCHIATRIC DIAGNONSES

1.  Major Depressive Disorder - Medication will be managed by prescriber , and psychotherapist appointments as ordered

2.  Anxiety - Will utilize coping skills as recommended by psychotherapist

3.  Social Isolation – A mental health worker was recommended to assist Altamir, and services approved by United Health Care

    Contact person: Cindy Murphy RN, healthcare advocate  (855) 202-0713, Extension: 74019 .

## ADAPTIVE & ASSISTIVE DEVICES

1.  Left Ankle Foot Orthosis for support while ambulating – Is currently in use

2. Shower chair in the tub – In place

3. Hand rails in the stairway – In place

4. Hand rails in the bathroom – In place

## MEDICATIONS

Mother will administer all medications as prescribed, and make follow-up appointments with Altamir's primary care physician, specialists and therapists for further assessment and recommendations of medication management.

## CARE TAKERS

This parent is a Registered Nurse by profession with 19 years of experience, and she will continue to assess for any medication side effects, behavioral changes and any change in condition, make appropriate interventions that are necessary. Parent will continue to communicate any concerns to Altamir's healthcare providers and implement their recommendations.

Parent will also involve the <u>mental health worker</u> assigned to Altamir in the home setting with recommendations, coping skills, discuss any medications prescribed and their potential side effects as well as their therapeutic effects, in order to effectively observe Altamir, communicate any changes and help improve his behavior.

## EVALUATION

Care plan will be updated monthly and as needed to improve Altamir's quality of life.

## GOAL

Gradually, with the care and resources Altamir will receive, we will encourage him to perform self care, and to manage his emotions

# LIST OF HEALTHCARE PROVIDERS

1. Dr. Cameron Lang, primary care physician at Blackstone Valley Community Health Center
   42 Park Place
   Pawtucket, RI. 02860
   Ph: (401) 722-0081

2. John Riccietelli, psychotherapist therapist at Morin Therapy
   1803 Smith Street
   North Providence, RI. 02911
   Ph: (401) 766-4477

3. Geran Keough NP, psychiatric medication prescriber at Quality Behavioral Health,
   75 Lambertlind Highway
   Warwick, RI. 02886
   Ph: (401) 681-4274

4. Mikaela Caracciolo, physical therapist at Performance Physical Therapy
   21 Division Street
   Pawtucket, RI. 02860
   Ph: (401) 226-0545

5. Dr. Arnold Sinsevere, epileptologist at Boston Children's Hospital
   300 Longwood Avenue
   Boston, MA. 02115
   Ph: (617) 355-7970

6. Boston Children's Hospital Developmental Medicine
   300 Longwood Avenue
   Boston, MA. 02115
   Ph: (617) 355-7970

Respectfully Submitted.

Carline Vilbon
74 Prince Street
Pawtucket, Rhode Island
(401) 654-3470
vilbonc@yahoo.com
**Dated:** January 26, 2021

# Exhibit W



Rhode Island Hospital
593 Eddy Street
Providence RI 02903-4923

Vilbon, Altamir A
MRN: 10018451898, DOB: 2/1/2007, Sex: M
Acct #: 1007869834
Adm: 8/24/2020, D/C: 10/29/2020

08/24/2020 - Admission (Discharged) in Hasbro Children's Hospital 6 Green (continued)

Clinical Notes (continued)

Based upon above, PT moderate complexity evaluation code 97162 is appropriate.

**Signature:**
Jess Gore PT, DPT

*Electronic Signature*

Electronically signed by Jessica Marie Gore at 8/26/2020 4:30 PM

**Consults by Christine Barron, MD at 9/17/2020 1556**

Author: Christine Barron, MD
Filed: 9/17/2020 4:55 PM
Editor: Christine Barron, MD (Physician)
Consult Orders

Service: Child Protection
Date of Service: 9/17/2020 3:56 PM

Author Type: Physician
Status: Signed

1. Inpatient Consult to Aubin Center [412772595] ordered by Marc J Perkel, Psy.D at 08/25/20 0719

**Reason for Consult:**
Medical Neglect

**Case Summary:**
Altamir "Alex" is a 13 year old with a past medical history of seizure disorder and behavioral problems (he had a work up for ASD/developmental delay). This current admission started on 8/24/2020 due to worsening aggression and suicidal ideation.

Aubin Center has been involved in the past due to concerns of sexual abuse by stepfather and more recently due to concerns for medical neglect of his mental health care. Patient has had prior psychiatric admissions and the treating psychiatric team identified that mother has not followed through on recommendations with increasing behavioral concerns for this patient.

Prior documentation by CAP Fellow Abigail Keogh at Aubin Center: Per chart review, Alex was admitted to Hasbro 6 three times (April 14-22, April 25- May 13, and June 25-present) in the last 6 months due to behavioral concerns, in addition to an admission to Boston Children's Hospital in early June for similar concerns. During Alex's admission to Hasbro 6 from April 14-22 mother signed an Intent to Leave (ITL) and thus Alex was discharged early. The primary team recommended that Alex attend the Hasbro partial program, but mother declined. During this admission DCYF



Rhode Island Hospital
593 Eddy Street
Providence RI 02903-4923

Vilbon, Altamir A
MRN: 10018451898, DOB: 2/1/2007, Sex: M
Acct #: 1007869834
Adm: 8/24/2020, D/C: 10/29/2020

**08/24/2020 Admission (Discharged) in Hasbro Children's Hospital 6 Green (continued)**

Clinical Notes (continued)

was called after Alex reported that his mother hit him with a belt, as a result DCYF put Communities for People in place for Alex and his mother at time of discharge. Three days after his discharge, Alex was re-admitted to Hasbro 6 at which time mother is documented as saying it was a mistake to have him discharged early the previous time. Alex was hospitalized on Hasbro 6 from 4/25-5/13, after which time mother agreed to transition him to the Hasbro Partial Program. During their intake session with the partial program, however, mother refused to sign the consents due to "privacy issues". As a result, mother decided not to send Alex to the partial program but to continue with therapy through Communities for People. Communities for People closed out services shortly after due to mother's inability to keep appointments and engage with them. Alex was then admitted to Boston Children's from 6/2-6/19, although mother is unwilling to share the details of this admission or why he was admitted there instead of to Hasbro. Most recently, Alex was admitted to Hasbro 6 on 6/25 due to ongoing behavioral concerns. During this admission mother again signed an ITL, and on several occasions became angry with staff. A report to DCYF was made during this admission due to concerns that mother will once again not follow through with discharge mental health recommendations for Alex.

A report was made to DCYF and DCYF CPI John Barletta is investigating. The team is in agreement that Alex at minimum needs to attend outpatient therapy on a regular basis. Mother appears to struggle with her own mental health issues, and has significant fear regarding the misuse/sharing of patient information, which she states is the result of a personal experience. Mother also has a limited supported system, especially since Alex's stepfather is no longer present in the home. Mother does, however, recognize that Alex needs help from a mental health standpoint and has brought him for mental health treatment but does not consisently follow through.

Attended a treatment team meeting on Tuesday 9/15/2020 with psychiatric providers (Marc Perkel PhD and Mirabelle Mattar, MD), mother and CPI John Barletta. Mother expressed her lack of trust and confidence with the team treating her son but agreed to discharge on Thursday 9/17/2020 and to comply with all aftercare plans. The same consistent recommendations for the psychiatric team has been and aftercare plan that includes:
- Individual therapy that specializes in distress tolerance and trauma-focused therapy to address patient concerns as well as a team with specialization in managing complex medical-psychiatric needs
- Medication Management from Psychiatry and Pediatrics/Neurology

During the in-person meeting mother agreed to have the patient participate in Gateway outpatient services, with the discussion that the Pediatric Partial Program was the most ideal but since mother did not want him to attend that program the second option would be Gateway with additional services to address his peer supports and interactions. During that meeting mother changed her plan several times regarding having the current team make a referral or not to Gateway. Ultimately mother agreed to have the team send over a referral and she agreed to these services. Gateway responded with an appointment on Thursday 9/17 in the afternoon. Therefore the plan would be to discharge him on Thursday 9/17 and have him start services with Gateway immediately. Mother changed the Gateway appointment to 9/22 as she has stated that she wanted to go on vacation. Reviewed with mother that was fine but he needs to start with Gateway services no later than 9/22.

At that time there was discussions of the level of DCYF involvement needed to ensure patient has recommended services. Since mother was agreeing to after care services a Straight Petition was requested by DCYF as due to prior history of agreeing but ultimately not follow through on recommendations.

Discharge plans were completed for today including a medical agreement summary that included all of the planned aftercare that included:

At discharge patient needs to complete the following:
1. Gateway Healthcare Home-Based Services, intake with Matthew Dondey, MS 401-954-5988. This was initially scheduled for 9/17 and rescheduled for 9/22 at 10:30 am based upon mother's request. Dr. Barron spoke with mother to assure that patient has his appointment no later than 9/22/2020
2. Social Groups:
   a) Social Sparks RI, intake only line 401-334-3439, intake@socialsparksri.com



Rhode Island Hospital
593 Eddy Street
Providence RI 02903-4923

Vilbon, Altamir A
MRN: 10018451898, DOB: 2/1/2007, Sex: M
Acct #: 1007869834
Adm: 8/24/2020, D/C: 10/29/2020

**08/24/2020 - Admission (Discharged) in Hasbro Children's Hospital 6 Green (continued)**

Clinical Notes (continued)

      b) Skills in Motion, 401-787-1178
3. Follow up with outpatient Psychiatry provider Jaron Keough, NP within 2 weeks of discharge
4. Follow up with Pediatric Physical Therapy 401-444-5020
5. Follow up with Rhode Island Hospital Neuropsychology 401-444-4500, Neuropsychological Testing with Christine Trask Wednesday 9/23 at 8:30 am
6. Follow up with Primary Care Physician Cameron Lang, MD 401-722-0081
7. Follow up with Neurologist at Boston Children's Hospital for appointment and to discuss 1:1 that mother identified was ordered by that provider.

Patient needs to complete all above identified aftercare and follow all the recommendations made by each of those providers.

This was included in the discharge summary from Aubin Center and provided to DCYF. Notified that the Straight Petition was filed and a court date on 9/21 was schedule and DCYF has updated mother

Today contacted by HCH 6th floor as mother refused to sign the discharge papers as she disagreed with the content. Met with treatment team and mother at Patient/Guest Services on 1st floor of RIH. Mother stated she would not sign discharge forms as she did not agree with the content. She stated that she would not follow through with Gateway as she wanted him to be evaluated by another team.

Attempted to review with mother that we could review the discharge paperwork and follow up appointments and have the staff document that this was reviewed with mother but that she disagreed with the content. Reviewed that she would have to follow up with services that are as outlined and previously agreed upon by mother or since she wanted him evaluated at another location to complete that and follow any and all recommendations. Mother would not agree to this and left stating that she would call her lawyer. As documented mother wanted to sign the patient out of the hospital Against Medical Advice (AMA) but that the patient was cleared for discharge so would not be against medical advice and AMA is not an completed for inpatient Psychiatric admissions, rather they us an Intent to Leave form which would still require discharge information and to which mother had signed last Tuesday but then rescinded.

The 6th floor made several other attempts to plan discharge with mother today. Due to the patient anticipating discharge this morning and still not discharged his behaviors were escalating. Mother blamed the hospital for this and has poor insight into how her actions have resulted in the patient's escalating behaviors.

Mother called to state that she wanted to have the patient transferred by ambulance from HCH to Carney Hospital. He did not meet medical criteria of a hospital to hospital transfer. Spoke with mother and Dr. Mattar mother stated that she would not speak about discharge, she would not discharge him. Mother was agitated she stated that her son is now in a "crisis" due to the staff. Attempted to explain to mother the options, and despite all efforts throughout this admission with mother refusing discharge and refusing to agree to follow up care a PRE with a 72-hour hold was filed. Mother's behaviors today are consistent with the pattern of behavior documented during prior admissions and attempts to have the patient receive the appropriate medical and mental health care, which mother agrees to but then refused when the time comes to complete these services and plans.

Mother hung up on us and therefore was not able to explain the 72-hour hold and the current plan to not allow direct communication as mother's behaviors were escalating the patient's behaviors. Mother called the unit several times she was transferred to speak with this physician but she hung up when this physician took the phone call. Attempted to call other but she hung up when this physician introduced myself. It was reported that after the PRE with 72-hour hold was completed mother had contacted the police to allege that the hospital was abusing the patient.

**Developmental History:** Is articulate, has obvious delays but is high functioning.

**Past Medical / Past Surgical:**

| Past Medical History: | Past Surgical History: |
|---|---|
|  |  |



**Lifespan**
*Delivering health with care.*

Rhode Island Hospital
593 Eddy Street
Providence RI 02903-4923

Vilbon, Altamir A
MRN: 10018451898, DOB: 2/1/2007, Sex: M
Acct #: 1007869834
Adm: 8/24/2020, D/C: 10/29/2020

**08/24/2020 - Admission (Discharged) in Hasbro Children's Hospital 6 Green (continued)**

## Clinical Notes (continued)

| Diagnosis | Date | Procedure | Laterality | Date |
|---|---|---|---|---|
| • Encephalitis<br>*mycoplasma 8/2014*<br>• Hemiparesis<br>*left lower extremity*<br>• Seizures | | • VAGAL NERVE<br>STIMULATOR | | |

## Home Medications:

**Medications Prior to Admission**

**Medication:**

- ARIPiprazole (ABILIFY) 2 MG tablet
- cholecalciferol, vitamin D3, 25 mcg (1,000 unit) capsule
- cloBAZam (ONFI) 10 mg tablet
- cloBAZam 20 mg tablet
- diazepam (DIASTAT ACUDIAL) 20 mg rectal kit
- divalproex (DEPAKOTE) 500 MG Delayed Release tablet
- lacosamide (VIMPAT) 50 mg tablet
- LORazepam (ATIVAN) 1 MG tablet
- zonisamide (ZONEGRAN) 100 MG capsule

## Current Medications:

**Current Facility-Administered Medications**

| Medication | Dose | Route | Frequency |
|---|---|---|---|
| • acetaminophen (TYLENOL) tablet 325 mg | 325 mg | Oral | Q4H PRN |
| • cholecalciferol (vitamin D3) capsule 3,000 Units | 3,000 Units | Oral | Once Daily |
| • cloBAZam (ONFI) tablet 30 mg | 30 mg | Oral | Every Morning |
| • cloBAZam (ONFI) tablet 40 mg | 40 mg | Oral | Every Evening |
| • diphenhydrAMINE (BENADRYL) tablet 50 mg<br>Or | 50 mg | Oral | Q6H PRN |
| • diphenhydrAMINE (BENADRYL) 50 mg/mL injection 50 mg | 50 mg | Intramuscular | Q6H PRN |
| • divalproex (DEPAKOTE SPRINKLE) capsule 750 mg | 750 mg | Oral | Q12H SCH |
| • escitalopram oxalate (LEXAPRO) tablet 10 mg | 10 mg | Oral | Once Daily |
| • lacosamide (VIMPAT) tablet 250 mg | 250 mg | Oral | 2 times daily |
| • LORazepam (ATIVAN) 2 mg/mL | 1 mg | Intramuscular | Q6H PRN |



Rhode Island Hospital
593 Eddy Street
Providence RI 02903-4923

Vilbon, Altamir A
MRN: 10018451898, DOB: 2/1/2007, Sex: M
Acct #: 1007869834
Adm: 8/24/2020, D/C: 10/29/2020

**08/24/2020 - Admission (Discharged) in Hasbro Children's Hospital 6 Green (continued)**

## Clinical Notes (continued)

| | | | |
|---|---|---|---|
| injection 1 mg | | | |
| • LORazepam (ATIVAN) tablet 2 mg | 2 mg | Oral | Q8H PRN |
| Or | | | |
| • LORazepam (ATIVAN) 2 mg/mL injection 2 mg | 2 mg | Intramuscular | Q8H PRN |
| • LORazepam (ATIVAN) tablet 1 mg | 1 mg | Oral | Q6H PRN |
| • midazolam INTRANASAL soln (VERSED) 3 mg/0.6 mL 10 mg | 10 mg | Nasal | Once Daily PRN |
| • polyethylene glycol (MIRALAX) packet 17 g | 17 g | Oral | Once Daily PRN |

**Home Diet:** Regular for age
**Allergies:**
Patient has no known allergies.

## Social / Family Histories:

### Social History

**Tobacco Use:**
• Smoking status: Never Smoker
• Smokeless tobacco: Never Used

**Substance Use Topics:**
• Alcohol use: Never
  Frequency: Never

**Passive Smoking**
• Passive smoking risk? No
• Smoker in contact with patient:
• Was counseling provided?

### Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Cancer | Maternal Grandmother | |
| • Depression | Mother | |
| • Anxiety disorder | Mother | |
| • Psychiatric illness | Maternal Uncle | |
| • Depression | Maternal Uncle | |
| • Hyperlipidemia | Maternal Uncle | |



Rhode Island Hospital
593 Eddy Street
Providence RI 02903-4923

Vilbon, Altamir A
MRN: 10018451898, DOB: 2/1/2007, Sex: M
Acct #: 1007869834
Adm: 8/24/2020, D/C: 10/29/2020

**08/24/2020 - Admission (Discharged) in Hasbro Children's Hospital 6 Green (continued)**

Clinical Notes (continued)

| Vital Sign | Last Filed | Range (24 hours) |
|---|---|---|
| Temp | 97.7 °F (36.5 °C) (09/17/20 0800) | [97.7 °F (36.5 °C)] |
| Heart Rate | 88 (09/17/20 0800) | [88-98] |
| Resp | 19 (09/17/20 0800) | [19] |
| BP | 123/70 (09/17/20 0800) | (112-123)/(70-72) |
| Weight | (!) 99.9 kg (220 lb 3.8 oz) (09/08/20 0800) | |
| SpO2 | 97 % (09/17/20 0800) | [97 %] |
| O2 Device | None (Room air) (09/17/20 0800) | |
| Flow Rate | | See Vitals Report |

Prior Examination:
General appearance: Awake playing a game and easily transitions to talking with this physician
HEENT: Normocephalic/ atraumatic, pupils equally round and reactive, no subconjunctival hemorrhage, Extraocular movement intact. Pinnae have no injuries. Nose no injuries. Oral pharynx no injuries.
Lungs: Clear bilaterally
Heart: Regular rate and rhythm
Abdomen: Bowel sounds normoactive. Abdomen soft, non-tender to palpation without guarding
Extremities: Warm, well perfused, Capillary refill < 3 seconds. DP pulses 2+ and symmetric
Skin: no rashes on arms, feet, face
Neurologic: Alert and oriented x 3

Today:

Patient is currently sleeping. No notable change in examination.

Patient's Hospital Problems:
Principal Problem:
  Adjustment disorder with mixed disturbance of emotions and conduct
Active Problems:
  Focal epilepsy with impairment of consciousness, intractable
  Left hemiparesis
  MDD (major depressive disorder), recurrent, severe, with psychosis
  Unspecified intellectual disabilities
  Status post VNS (vagus nerve stimulator) placement

Assessment and Recommendations:
Altamir A Vilbon is a 13 y.o. male with seizure disorder, who presents with acute SI and unsafe behaviors (eloping), requiring emergent psychiatric hospitalization which began on 8/24/2020 for this admission.

He has had prior admissions for psychiatric reasons in the past and his team has identified that mother has not followed through on his mental health care. A report was made to DCYF in the past and additional reports were made during this admission due to medical neglect. DCYF filed a straight petition to ensure mother has supports, services and monitoring that patient's medical and mental health needs are met. A court date was scheduled for 9/21 and mother was made aware of this by DCYF.

Today mother has refused to sign discharge forms, she is now stated that she will NOT follow up with outpatient treatment plan as she does not want to follow the recommendations of this treating team. Mother could have discharged him today and had him complete another evaluation at another institution, however she would not agree to the discharge as planned today. This change in the discharge plan escalated the patient's behaviors, which mother



Rhode Island Hospital
593 Eddy Street
Providence RI 02903-4923

Vilbon, Altamir A
MRN: 10018451898, DOB: 2/1/2007, Sex: M
Acct #: 1007869834
Adm: 8/24/2020, D/C: 10/29/2020

**08/24/2020 - Admission (Discharged) in Hasbro Children's Hospital 6 Green (continued)**

Clinical Notes (continued)

blames on the hospital and has poor insight into how her actions today have resulted in the dysregulation of the patient's behaviors.

Mother has demonstrated a pattern of agreeing to recommended treatment plans but not completing them. Mother will blame others for this failure to follow up- such as reporting that the patient did not attend pediatric partial program reporting that the program refused his admission when in fact he could not attend because mother would not sign the forms.

Review of this history is consistent with medical neglect by mother. PRE with a 72-hour hold is filed to ensure that patient receives all necessary medical and mental health care.

Attempted several time to explain the PRE with 72-hour hold to mother and plan to not have her directly communicate with the patient as this has caused increased dysregulation for the patient. Mother has hung up on this physician several times so this discussion was not possible. It was reported by unit that mother called the police to report that the hospital was abusing her son. This physician is available to speak with mother to explain the PRE with 72 hour hold when she is willing to speak with this physician.

Please send a copy of this report to PMD and DCYF CPi John Barletta

| Primary Care MD: Cameron Lang, MD | Phone: 401-722-0081 |
| Referring MD: No ref. provider found | Phone: N/A |

**I have discussed the plan of care with:** current treatment team
I have reviewed, updated, and verified this note's content.

**Signature:**
**Christine Barron, MD**
*Electronic Signature*

Electronically signed by Christine Barron, MD at 9/17/2020 4:55 PM

Consults by Jacob A Korzun, MD at 9/24/2020 1503

| Author: Jacob A Korzun, MD | Service: Pediatric Neurology | Author Type: Resident |
| Filed: 9/24/2020 7:10 PM | Date of Service: 9/24/2020 3:03 PM | Status: Attested |
| Editor: Jacob A Korzun, MD (Resident) | | Cosigner: Rachit Patil, MD at 9/28/2020 5:16 PM |


CARLINE VILBON
74 PRINCE ST
PAWTUCKET, RI 02860-2324

VZ6D2
455-120820
ALTAMIR VILBON

LOCRI025
Dec 16 2020  7:49AM



529

# CONFIDENTIAL – MEDICAL RECORDS

This packet may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, please forward these records to the person(s) who handles medical records for your organization.  Any misuse of this information is a violation of state and federal privacy laws and is strictly prohibited.  If you feel you have received these records in error, please call (800) 560-3800.

Sharecare Health Data Services is the contracted Release of Information (ROI) provider for the source facility for these medical records.  If you are interested in learning more about our ROI and related services, please call (800) 560-3800 or visit hds.sharecare.com.

Sharecare Health Data Services, LLC | 800.560.3800 | 8344 Clairemont Mesa Blvd, Suite 201, San Diego, CA 92111 | hds.sharecare.com

# Exhibit X



52 05/34 43

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
DEPARTMENT OF CHILDREN, YOUTH AND FAMILIES
101 FRIENDSHIP STREET, PROVIDENCE, RHODE ISLAND 02908
1-800-742-4453

Exhibit A

**REPORT OF EXAMINATION**
(See reverse side for statutory regulations)

NAME OF CHILD Altamir Vilbon     D.O.B. 2/1/07

ADDRESS _____

NAME OF PARENT (Caretaker): Carline Vilbon

ADDRESS (If different from above): _____

I, (please print) Christine Barron a duly licensed (physician) or certified registered nurse practitioner
in the State of Rhode Island, have examined the above child in accordance with the provisions of RIGL
40-11-5, 40-11-6 on _9/17/2020_ (date), in _Providence_ (location).
There __✓__ is _____ is not evidence of injury° to the child.

NATURE AND EXTENT OF ABUSE/NEGLECT: Bayo admitted with
behaviorale health. He has had multiple admissions
and mother fails to keep follow-up mental
health treatments. Mother agreed to

OTHER PERTINENT INFORMATION (history): Crisler/Custody Services so
discharge was planned for today. Mother refused
to sign discharge papers, upset patient
and is now also refusing the discharge
services that she had agreed to bring him to earlier
this week

IS/WAS THE INJURY CAUSED BY: _____ ACCIDENT _____ OTHER MEANS? ___

If the injury° was caused by other means, please explain:
↑ behaviors which mother blames on hospital
but is related to mother's denial + does not
recognize disclose that has caused the anxiety
in patient

°INJURY MEANS: "excessive corporal punishment"
    "evidence of malnutrition without organic causation"
    "sexual molestation"
    "any type of inflicted injury, neglectful treatment evidenced by physical and/or emotional
    harm"

I authorize the detention of this child for his/her protection for a period of seventy-two (72) hours in:
_____ a hospital; __✓__ the care of the Department of Children, Youth and Families or a licensed child
care facility.

_____ I do not authorize the detention of this child.

SIGNATURE: _____ DATE: _9/17/2020_
NAME: Christine Barron
ADDRESS: _____

**IMPORTANT NOTES:** 1) Please use black ink. 2) Write legibly; if necessary print. 3) Please avoid the use
of medical forms of notation.

WHITE (DCYF)    YELLOW (PATIENT CHART)    PINK (AMBULATORY CENTER)    GOLD (SOCIAL SERVICE)

# Exhibit Y

CASE NAME: Vilbon, Carline                                     Page 1

---

**09/17/2020**  **Contact - Phone: With Medical Provider**
**01:00 PM**  **Worker:  John F. Barletta**                 Entered By:  **John Barletta**
**ID: 7409549**

> Dr Barron called child to be discharge today  mother refused to sign discharge agreement as she did nit agree with child's diagnosed   CPI advised expedited straight petition filed date for 9/21/20 12PM CPI has text mother.

---

**09/19/2020**  **Report/Other: Correspondence**
**05:15 AM**  **Worker:  Ruth Crawford**                 Entered By:  **Ruth Crawford**
**ID: 7410476**

> Carline Vilbon called the hotline this morning. She wanted to make sure that it was documented that she is not mistreating her child. She refused to take her son home due to the belief that the hospital is setting her up, and lying. She feels that the hospital is mistreating her son, and wants him to be transferred to another facility. However, they are refusing. She is looking at getting an attorney.  She can be reached at 401-654-3470

---

**09/22/2020**  **Report/Other: Other CAN**
**02:45 PM**  **Worker:  Susan E. Egan**                 Entered By:  **Susan Egan**
**ID: 7411890**

> Carline Vilbon called hotline asking if SW is assigned ot her case yet. She can be reached at 654-3470

---

**09/23/2020**  **Contact - Email: With DCYF Worker**
**02:00 PM**  **Worker:  Deborah A. Drury-Houghton**                 Entered By:  **Deborah Drury-Houghton**
**ID: 7412760**

> Placement Unit Request received from CPS Sup.  Preliminary referrals sent to all specialized foster care agencies. I will send them the referral packet and LON once they are providede.  I notified the CCU of the need for referrals as well.  I sent a copy of the court order of 9/21/2020 to CCU with the email.

---

**09/23/2020**   **Report/Other: Critical Information/Medical**
**03:00 PM**   **Worker: Lisa M. D'Antonio**      **Entered By: Lisa D'Antonio**
**ID: 7412626**

CPI Sup spoke to Laura, nurse on Hasbro 6

She reports Altamir is currently diagnosed with depression and conduct disorder with mixed disturbance of emotion and conduct.

His scheduled meds are
1) vitamin D3 1x daily
2) Onfi (for seizures) 30 mg at 630a; 40 mg at 630p
3) Depakote sprinkle (for seizures) 750mg at 630a and 630p
4) Vimpat (for seizures) 250mg at 630a and 630p
5) Lexipro (for depression) 10mg at 630a

His prn meds are
1) benedryl (for agitation) 50 mg
2) ativan 1mg for cluster seizures (3 or more in 1 hour)
3) versed 10 mg for a seizure lasting over 5 minutes

---

**09/24/2020**   **Report/Other: Other CAN**
**08:30 AM**   **Worker: Susan E. Egan**      **Entered By: Susan Egan**
**ID: 7412811**

Carline Vilbon called the hotline asking who her SW is. She can be reached at 654-3470. She requested a call back from whomever is assigned.

---

**09/24/2020**   **Contact - Phone: With Parent**
**11:20 AM**   **Worker: Lori A. Fernandes**      **Entered By: Lori Fernandes**
**ID: 7412989 Case Participant(s): Carline Vilbon, Altamir A. Vilbon**

Return call to Carlin. Left message.

---

**09/24/2020**   **Contact - Phone: With Parent**
**02:57 PM**   **Worker: Lori A. Fernandes**      **Entered By: Lori Fernandes**
**ID: 7413210 Case Participant(s): Carline Vilbon, Altamir A. Vilbon**

Call from Carline, She said she is not able to speak to her son. DCYF needs to monitor the phone calls and she cannot speak to her son. She said she has brought her son to the hospital and has not been negligent. She said she has been treated unfairly and she refused to sign the document that indicated parent/child conflict. She said her son has epilepsy and has managed his care. She said she has followed all of the Doctor's recommendations. Her son was unjustly taken away. She should not have to fight with the hospital. They have been mistreated. She did not anticipate this. He was admitted because he was having difficulty being isolated because of COVID. Told Carline that DCYF is here to work with her now and her son home. Informed her of court date and will not sign anything until she speaks to her Attorney.

# Exhibit Z


**Lifespan**

Rhode Island Hospital / Hasbro Children's Hospital
Health Information Management Department
593 Eddy Street
Providence, R.I. 02903
Tel: 401.444.4040; Fax: 401.444.7936

## ✓ Authorization to Use or Disclose Protected Health Information
*(This form must be completed in full before signing)* ▽

Patient Name **Altemir A. Vilbon** DOB **02/01/07** Phone **(401) 654-8470**

Address **74 Prince Street** ____ **Pawtucket** ____ **R.I. 02860**
Street · City · State · ZIP

1. I hereby authorize Rhode Island Hospital to: ☑ Release to ☐ Obtain from **CALL WHEN READY**

**Carline Vilbon**
Person / Place / Institution

**74 Prince Street** ____ **Pawtucket, R.I. 02860**
Street · City · State · ZIP

3. Dates of treatment or time period **10/28/17 — 10/30/20** to present and continuing

4. Purpose for which disclosure is to be made: ☐ Coordination of Care ☑ Patient Request ☐ Legal

☐ Other (please specify): ____

5. Record Format-please check one: ☑ paper ☐ data storage device

6. Information to be disclosed (check all applicable): *There may be a fee associated with this request*

☑ Emergency Dept. Record ☐ Operative/Path Report ☐ Lab/X-ray Reports ☑ Other Diagnostic Testing
☑ Clinic/Office Visit ☑ Consultation / Evaluation ☑ After Visit Summary
☐ Abstract* ☐ Discharge Summary ☐ Other
\*Abstract includes: Facesheet, ED Record, H & P, D/C Summary, Consult, Operative report, Pathology report, test results, PT / OT / ST

open in 12/8/2020

For Behavioral Health Affiliates: ☑ Assessment ☑ Treatment Plan ☐ Psychiatric Evaluation ☑ Medications

7. I do not want the following information disclosed: ☐ mental health ☐ alcohol/drug use/test
☐ sexual abuse ☐ sexually transmitted infections ☐ AIDS/HIV test results

8. I understand that my records are protected under the federal privacy laws and regulations and under the General Laws of Rhode Island, and cannot be disclosed without my written consent except as otherwise specifically provided by law. I also understand that certain health records containing alcohol or drug abuse information may be subject to further protection under Federal Regulation 42 CFR Part 2. Confidentiality of Alcohol and Drug Abuse.

9. I understand that if the person(s) or entity (ies) that receive(s) this information is not a health care provider or health plan covered by federal regulations, the information described above may be re-disclosed and is no longer protected by those regulations. I release Lifespan, its employees and my physicians from all liability arising from this disclosure of my health information.

10. It is my understanding that this authorization is for information we have at the time of your request, only for the information requested above and will expire 1 year from the date signed below. I understand that I may revoke this authorization by notifying Lifespan in writing. I understand that any previously disclosed information would not be subject to my revocation request.

11. I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment, payment, or my eligibility for benefits, unless otherwise described in the space provided here:

**Carline Vilbon** ____ **10/16/20**
Signature of Patient, Legal Guardian or Representative · Date/Time

**Carline Vilbon** ____ **11/16/20**
Print name of Patient, Legal Guardian or Representative · Date/Time

\*Note Concerning Minors: For disclosures to persons / entities other than medical providers, the signature of a patient under 18 years who gave legal consent for testing, examination or treatment for reportable communicable disease (including HIV & venereal disease) or for alcohol and/or drug abuse treatment is required.

Rev: 1/2016



Rhode Island Hospital
593 Eddy Street
Providence RI 02903-4923

Vilbon, Altamir A
MRN: 10018451898, DOB: 2/1/2007, Sex: M
Acct #: 1007833234
Adm: 8/17/2020, D/C: 8/24/2020



| | | |
|---|---|---|
| Encounter Date/Time: | 8/17/2020 2151 |
| Patient Name: | Vilbon, Altamir A |
| MRN: | 10018451898 |
| Hospital Account: | 1007833234 |
| Contact Serial #: | 6059256882 |

## VISIT/ENCOUNTER

| | | | | | |
|---|---|---|---|---|---|
| Hospital Service: | Pediatric Hospitalist | Patient Class: | Inpatient | Unit: | RCH CH6R |
| Department: | | | | Bed: | C623/01 |
| Scheduling Visit Type: | | | | Scheduling Provider: | |
| Admitting Provider: | Michael P Koster, MD | | | Attending Provider: | |
| Referring Physician: | | Phone: N/A | | Adm Diagnosis: | Autism [F84.0] |

## PATIENT

| | | | |
|---|---|---|---|
| Name: | Vilbon, Altamir A "Alex" | DOB: | 2/1/2007 (13 yrs) |
| Address: | 101 Friendship St, DCYF | Legal Sex: | Male |
| City: | PROVIDENCE RI 02903 | Needs Interpreter: | No |
| Prefer/Written Language: | English / English | Religion: | Christian |
| Primary Care Provider: | Cameron Lang, MD | Primary Phone: | 401-528-3900 |

### EMERGENCY CONTACT

| Contact Name | Legal Guardian? | Relationship to Patient | Home Phone | Work Phone |
|---|---|---|---|---|
| 1. Sae-Eung, Tin (DCYF) | Yes | Other | (401)528-3900 | |
| 2. *No Contact Specified* | | | | |

## GUARANTOR

| | | | |
|---|---|---|---|
| Guarantor: | Vilbon, Carline | DOB: | 8/12/1972 |
| Address: | 74 Prince St | Sex: | Female |
| | Pawtucket, RI 02860 | | |
| Relation to Patient: | MOTHER | Home Phone: | 401-654-3470 |
| Guarantor ID: | 73235 | Work Phone: | |

### GUARANTOR EMPLOYER

| | | | |
|---|---|---|---|
| Employer: | Abil Businesss Syte* | Status: | Full Time |

## COVERAGE

### PRIMARY INSURANCE

| | | | |
|---|---|---|---|
| Payor: | UNITED HEALTHCARE | Plan: | UHC BEHAVIORAL HEALTH |
| Group Number: | 91000 | Insurance Type: | INDEMNITY |
| Subscriber Name: | VILBON,ALTAMIR A | Subscriber DOB: | 2/1/2007 |
| Subscriber ID: | 958153822 | Member ID: | 958153822 |
| Pat. Rel. to Subscriber: | Self | | |

### SECONDARY INSURANCE

| | | | |
|---|---|---|---|
| Payor: | N/A | Plan: | |
| Group Number: | | Insurance Type: | |
| Subscriber Name: | N/A | Subscriber DOB: | |
| Subscriber ID: | N/A | | |
| Pat. Rel. to Subscriber: | N/A | | |


Rhode Island Hospital
593 Eddy Street
Providence RI 02903-4923

Vilbon, Altamir A
MRN: 10018451898, DOB: 2/1/2007, Sex: M
Acct #: 1007833234
Adm: 8/17/2020, D/C: 8/24/2020

## 08/17/2020 - ED to Hosp-Admission (Discharged) in Hasbro Children's Hospital 6 Red

## Visit Information

### Admission Information

| | | | | | |
|---|---|---|---|---|---|
| Arrival Date/Time: | 08/17/2020 2142 | Admit Date/Time: | 08/17/2020 2151 | IP Adm. Date/Time: | 08/18/2020 1338 |
| Admission Type: | Emergency | Point of Origin: | Non-healthcare Facility | Admit Category: | |
| Means of Arrival: | Ems Pawtucket | Primary Service: | Pediatric Hospitalist | Secondary Service: | N/A |
| Transfer Source: | | Service Area: | LIFESPAN CORPORATION | Unit: | Hasbro Children's Hospital 6 Red |
| Admit Provider: | Michael P Koster, MD | Attending Provider: | Lynne M Palmisciano, MD | Referring Provider: | |

### Discharge Information

| Discharge Date/Time | Discharge Disposition | Discharge Destination | Discharge Provider | Unit |
|---|---|---|---|---|
| 08/24/2020 2021 | Psychiatric Hospital | Hasbro Childrens Hospital | None | Hasbro Children's Hospital 6 Red |

### Follow-up Information

| Follow-up With | Details | Why | Contact Info |
|---|---|---|---|
| Cameron Lang, MD | Follow up in 2 day(s) | | 39 East Avenue Pawtucket RI 02860 401-722-0081 |

## Reason for Visit

### Chief Complaints

- Suicidal
- Aggressive Behavior

### Visit Diagnosis

| Name | Is ED? |
|---|---|
| Autism (primary) | Yes |

### Hospital Problems

| Name | Date Noted | Date Resolved | Present on Admission? |
|---|---|---|---|
| Suicidal ideations (primary) | 04/15/2020 | — | Exempt from POA reporting |
| Autism | — | — | Unknown |
| Parent-child conflict | 05/13/2020 | — | Exempt from POA reporting |
| Seizure disorder | 08/27/2015 | — | Yes |

## ED Provider Note

### ED Provider Notes by Melissa N Rodriguez Rodriguez, MD at 8/17/2020 2206

| | | |
|---|---|---|
| Author: Melissa N Rodriguez Rodriguez, MD | Service: Emergency Medicine Pedi | Author Type: Resident |
| Filed: 8/18/2020 1:31 AM | Date of Service: 8/17/2020 10:06 PM | Status: Attested |
| Editor: Melissa N Rodriguez Rodriguez, MD (Resident) | | Cosigner: Lynne M Palmisciano, MD at 8/18/2020 1:35 AM |

# Exhibit 1

## Ambulatory Documentation

--------------------
From: Ricci , Giovanna
To: Epilepsy/SanseverePool;
Sent: 01/07/2021 11:44:07 EST
Subject: Confirm Rx / Update

Lynn Andrews is an RN at Altamir's group home. Altamir was recently discharged from Bradley hospital on 12/30 and she believes they may have accidentally changed his medication doses

- Dr. Sansevere's most recent Lacosamide instructions were 300mg BID, but Bradley changed it to **250mg AM and 300mg PM.**
If Dr. Sansevere would like to keep him at 300mg BID, she would like a new Rx sent to Genoa pharmacy

- Most recent Ativan instructions were 1 mg PRN seizure not to exceed 2 doses in 24 hours, Bradley changed it to **1mg 4x/day PRN,** included to administer for agitation as well. She wanted to know if Dr. Sansevere is in agreement with this change

- They also changed the VNS order to **swipe every 1 minute during a seizure,** she wanted to verify that Dr. Sansevere would like to continue with this.

She reports Altamir is having an increase in seizure activity, a possible trigger is transitioning from the group home to the ED and the ED back to the group home.

Altamir typically has 1-2 seizures each day and can go a few days without seizure activity, but for the past 3 days he's had 4-6 seizures each day. They typically last less than 30 seconds but there was an episode that lasted 1 minute. The timing varies and sometimes they occur while he's sleeping. Seizures consist of abnormal movements, other seizures consist of him being unresponsive for a few seconds without abnormal movements. No recent fever or illness, no significant changes in appetite. He continues to experience difficulty sleeping.

Lynn can be reached at: 401-623-0321

# Exhibit 2

**Boston Children's Hospital**

300 Longwood Avenue
Boston, MA 02115
Phone: (617) 355-5000

| | |
|---|---|
| **BCH MRN:** | **489-58-66** |
| **Patient Name:** | **VILBON, ALTAMIR A** |
| **DOB/Age/Sex:** | 2/1/2007    13 years    Male |

**Admit Date:**    7/27/2020

**Discharge Date:** 7/27/2020

**Patient Location:** Epilepsy

**Patient Type:**    Outpatient
**Financial #:**    6127305012

## Ambulatory Documentation

DOCUMENT NAME:
SERVICE DATE/TIME:
PERFORM INFORMATION:

Neurology Communication
1/13/2021 12:35 EST
KUBISKI RN,RACHAELANN MARIE (1/13/2021 14:08 EST);
SANSEVERE MD,ARNOLD J (1/13/2021 12:35 EST)

SIGN INFORMATION:
RESULT STATUS:

Modified

**Addendum by KUBISKI RN, RACHAELANN MARIE on January 13, 2021 14:08:53 EST**

--------------------
From: KUBISKI RN, RACHAELANN MARIE (Epilepsy/SanseverePool)
To: Epilepsy/SanseverePool; SANSEVERE MD, ARNOLD J;
Cc: Epilepsy/SocialWorkPool;
 Sent: 01/13/2021 14:08:53 EST
Subject: FW: Confirm Rx / Update

Spoke with Lynn (group home RN), Altamir was readmitted to Hasbro and their behavioral health unit on Monday.  Unclear
what the plan is when discharged, where he will be placed, or if follow up will be with Hasbro or BCH.

--------------------
From: SANSEVERE MD, ARNOLD J
To: Epilepsy/SanseverePool;
Sent: 01/13/2021 12:35:22 EST
Subject: RE: Confirm Rx / Update

Thank you.
The current adjustments are fine as is the swiping frequency.
He will need a follow up. He missed the last appointment.
They should see sleep medicine if sleeping issues continue.
Thanks!
Arnold J. Sansevere, MD
Attending in Pediatric Neurology and Epilepsy

--------------------
From: KUBISKI RN, RACHAELANN MARIE (Epilepsy/SanseverePool)
To: Epilepsy/SanseverePool; SANSEVERE MD, ARNOLD J;
Sent: 01/07/2021 13:28:19 EST
Subject: FW: Confirm Rx / Update

Please see below and respond to questions.

# Exhibit 3

PROVIDENCE, SC.

IN THE MATTER OF:

**VILBON, Altamir**

FAMILY COURT

F.C. NO.

**PJ20-002943**

## MOTION TO MODIFY MOTHER'S VISITATION

Now comes the Department of Children, Youth and Families, ("DCYF") by and through its attorney, and respectfully requests that this matter be set down for review and as grounds therefore states:

1.  That the above-named child, thirteen (13)-year-old Altamir Vilbon, aka Alex Vilbon, is in the temporary custody of DCYF until further order of the Court.

2.  That said child is a resident at the Center for Autism and Developmental Disability (CADD) Rumford House group home ("the Residence"); and carries the following diagnosis: Intellectual Disability, Major Depressive Disorder, and Adjustment Disorder.

3.  That on October 29, 2020, said child was admitted, and has since require inpatient hospitalization twice following significant events of crisis behavior in the milieu.

4.  That Mother has been uncooperative with service planning despite reasonable efforts by DCYF to engage with Mother do so. Mother has also refused to sign any releases for placement and medical releases that would allow for the coordination of services.

5.  That, in addition to phone calls with said child during the week, Mother visited with said child on November 13, 2020 and November 20, 2020. Mother was scheduled to visit with said child on November 6, 2020, however, this visit was cancelled due to the ongoing public health crisis.

6.  That residential staff reported that during these events, said child reacted negatively to his Mother's leaving the residence including, but not limited to, physically preventing mother from leaving. Said child engaged in self-injurious behavior, aggression towards others, property destruction, and suicidal behavior when residential staff attempted to intervene.

7. That staff at the Residence have requested that contact between Mother and said child be temporarily limited while said child safely adjusts to being in residential care, where he can get the necessary treatment with the ultimate goal of reunification with Mother.

8. That the foregoing establishes that there has been a substantial change in circumstances that poses an imminent risk of harm to the above-named child: That said child shows serious emotional symptoms requiring immediate help and/or lacks behavioral control, or exhibits self-destructive behavior; and Mother is unwilling or unable to arrange or provide care.

9. That based on the foregoing, it is in said child's best interest for visitation with Mother to be temporarily limited.

10. That the letter provided by Social Caseworker Tia Sae-Eung and Casework Supervisor Norie Sherman is attached hereto and incorporated herein as "Exhibit A".

11. That the letter provided by Bradley Hospital is attached hereto and incorporated herein as "Exhibit B".

WHEREFORE, your petitioner prays that this Honorable Court, in granting DCYF's Motion to Modify Mother's Visitation, make the following findings and grant the following relief:

1. Find that the action(s) and/or lack thereof taken by the Parents in response to the above-named child's action or inaction has caused said child to suffer undue emotional stress.

2. Find that a modification of visitation is in the best interests of the above-named child.

3. Order that DCYF have discretion as to visitation.

4. Order that Mother's visitation be supervised by DCYF or a third-party approved by DCYF.

5. Order Mother to sign releases for placement and releases for medical and medications to allow for the coordination of services.

6. Any and all other such relief that that Honorable Court deems right and just.

Respectfully submitted,
DEPARTMENT OF CHILDREN, YOUTH AND FAMILIES
By its attorney,

/s/ Alexander B. Terry
Alexander B. Terry, Esq. (#10046)
EOHHS-DCYF Senior Legal Counsel

## NOTICE

Diane Daigle, Esq., CASA, ddaigle@courts.ri.gov

Susan Pires, Esq., SUSANPIRES@PIRESLAW.COM

Tia Sae-Eung, SCW II, Tia.SaeEung@dcyf.ri.gov

Susan Rivera, SCW II, susan.rivera@dcyf.ri.gov

Please take notice that the above will be called for an in person hearing on the 18th day of December 2020, in Providence/Bristol County Family Court. Please be advised that this matter is already scheduled for that date.

/s/ Alexander B. Terry
Alexander B. Terry, Esq. (#10046)

VILBON, Altamir                                          PJ20-002943

## CERTIFICATION

I HEREBY CERTIFY THAT on the 14th day of December 2020:

**X**      I filed this document through the Rhode Island Judiciary's Electronic Filing System and sent a copy of this document to the following parties via e-mail to the above-named parties.

The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/ Alexander B. Terry
**Alexander B. Terry**

# Exhibit 4

Plaintiff,
Department of Children
Youth and Families

DOCKET NO. PJ20-002943

vs.

Defendant,
    Carline Vilbon

## **DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND OBJECTION TO DCYF'S**

## **MOTION TO MODIFY MOTHER'S VISITATION**

Pursuant to Rhode Island Rule of Juvenile Procedure, rule 10 (g), (1),(a),(c)., I request this court

to deny the Plaintiff's motion to modify my visitation, because I have been falsely accused and

that Plaintiffs have sought their motion in bad faith.

 As ground for this objection, I state the following:

 Altamir A. Vilbon was unlawfully detained as a result of the DCYF's and the Lifespan facilities

unlawful practices, which has caused suffering, worsening of his medical and psychiatric

conditions.

1. I deny the allegations in paragraph 3, because the events which preceded Altamir's

    hospitalizations were orchestrated by The Rumford House and their affiliates as

    stated in my Motion to Stay Pending Appeal, of Plaintiff's Certification Complaint

    Docket entry 12/21/20 and my Amended Petition for Writ of Habeas Corpus,(Docket

    entry 01/08/20 Exhibit H) where an employee at the Rumford House, inflicted trauma

    on Altamir, exacerbated his symptoms in attempt to have him indefinitely committed.

2. I deny the allegations in paragraph 4, and state that Tia Saeung's was coercive and intimidating in offering a service plan, and showed no consideration, when I objected to offering me mental health services, which is unconstitutional. See text conversations dated 11/10/20 and 11/12/20 in EXHIBIT A.

3. In paragraph 6, the behaviors exhibited by Altamir was a result of the trauma that was inflicted on him during his admission at the Hasbro Children's Hospital (HCH), where he was unlawfully detained, frivolously restrained, physically and chemically, and put on seclusion and isolation from me and his family, who he relies on for emotional support.

4. Plaintiff's request in paragraph 7 should also be denied, because the Rumford House have not implemented any effective treatment for Altamir, have disobeyed his doctor's orders, prevented him from receiving treatment from his healthcare providers, and failed to enroll him in school for nearly one month. I reported this medical and educational neglect to the DCYF's hotline and to the Guardian At Litem on November 9, 2020( See Amended Writ of habeas Petition Exhibit D).

5. I object to and deny the allegations in paragraph 8, where the Plaintiff is trying make accountable for any change in Altamir's condition, because it was worsened by the Lifespan facilities. And although I have attempted to cooperated with the Rumford House's nurse in scheduling Altamir's medical appointments, but when it became clear that they ill-intents in preventing Altamir from seeing his healthcare providers, I was not obligated to sign any documents, which would incriminate me and or cause further harm to my son, and that such signatures could have been obtained from the

DCYF's director ( See Defendant's Motion to Stay Pending Appeal (Docket entry 12/21/20 Exhibit C and D).

6. I object to and deny the allegations in paragraph 10 through 11, and further state that the statements in Exhibit A and Exhibit B were forged in part, in order make accountable for any change in Altamir's condition, and the Rumford House's failure to provide proper care for Altamir as stated (in Defendant's Motion to Stay Pending Appeal (Docket entry 12/21/20 Exhibit C and D). I further deny the allegations in Exhibits A and B that after each phone call with me, Altamir misbehaves, and gets out of control, because those statements are in contradiction with the phone calls that I receive from the staff to help intervene with Altamir, during time of crisis. And most recently, on January 2, 2021 at 12:36 PM, a staff named Anthony left me a voice message, requesting my intervention with Alex. Due to time constraints, I am unable to produce this voice message in accordance with the Court rules, but I can submit this evidence if the Court requires it.

In regards to Altamir's second hospitalization stated in Exhibit A of Plaintiff's motion, I felt obligated to check on Altamir, as I heard a sound of a boy like his voice crying in the background, and therefore, tried to console him, to prevent any unnecessary hospitalization.

## **ADDITIONAL CONCERN DURING DISCOVERY**

Tia Saeung the DCYF's social worker left this case, shortly after derogatory letter to the Court about me, I became concerned of being falsely accused, as I did in the past, where Saeung told me that I caused my son to be deregulated (See Amended Writ of Habeas Corpus Petition Docket entry 01/08/21 Exhibit F).

The new social worker Susan Rivera who replaced Ms. Saeung has also showed a lot of concerns based of the false allegations that have been submitted to this Court in support of DCYF's Motion to Modify my visitation. To prevent further misrepresentations and accusations, I have placed the visits with Altamir on hold, and told Mrs. Rivera about my concerns, which I have clarified with Altamir was for our own benefit not to appear at the Rumford House, whose staff have accused me falsely, until I address my concerns with the Court. See email conversation with Susan Rivera dated 12/23/20 as EXHIBIT B and email dated 12/30/20 as EXHIBIT C.

Despite the danger that I perceived in communicating directly with the Rumford House Administrative staff, Susan Rivera has sent many email messages to me, requesting and demanding that I contact the Rumford House, and claimed that it was in the best interest of Altamir, and that she hired a company name Boy's Town to supervise my visits, without a court order. See email communications with Susan Rivera dated 01/06/21 as EXHIBIT D.

## CONCLUSION

The DCYF's social workers, Tia Saeung and Susan Rivera have acted unprofessionally toward me, by incriminating which put me and my son at risk of harm and injustice where the Court would rely on their misrepresentation.

**WHEREFORE:** WHEREFORE, I the Defendant, Carline Vilbon, respectfully request this honorable Court order for a protective order allowing me to record all further telephone calls, visitation, and Zoom calls, to provide evidence to the Court of what was stated if needed, and to prevent false hearsay allegations.

I also request the Court to deny the DCYF's Motion to Modify Mother's Visitation for good cause, based on the misconduct of DCYF's employees and accusation of the Rumford House

staff which are in violation of this Court's discovery procedures pursuant Rhode Island Rules of

Juvenile rule 10(g), (1),(a),(c).

Respectfully Submitted

*Carline Vilbon*

Carline Vilbon
74 Prince Street
Pawtucket, Rhode Island
(401) 654-3470
vilbonc@yahoo.com

**Dated**: January 11, 2021


### CERTIFICATE OF SERVICE

I hereby certify that, on the 11th day of January 2021, I served

a copy of the following documents:Defendant's Motion for Protective Order and Objection to

DCYF's Motion to Modify  Mother's Visitation and EXHIBITS A through D via electronic mail

to the Plaintiff's attorneys Alexander B. Terry at alex.terry@dcyf.ri.gov  and

Attorney Diane Daigle at ddaigle@courts.ri.gov


*Carline Vilbon*

Carline Vilbon

Plaintiff,

STATE OF RHODE ISLAND

Department of Children, Youth and Families

FAMILY COURT

And Fa  ilies

PROVIDENCE COUNTY

Defendant,

CARLINE VILBON

Case No. PJ20-002943

## **AFFIDAVIT**

I, [Carline Vilbon], being first duly sworn on oath, depose and state that I am the Defendant in the above action; that I have read the above and foregoing Defendant's Motion for Protective Order and Objection to DCYF's Motion to Modify Mother's Visitation and that the statements and Exhibits contained therein are true and correct to the best of my knowledge and belief.

[Carline Vilbon], Defendant,

DL# 0512322
RI

74 Prince Street, Pawtucket, RI. 02860

Subscribed and sworn to before me this 11 day of January 2021

Notary Public
My Commission Expires

CINDY TURCIOS
NOTARY
PUBLIC
ID # 760870
STATE OF RHODE ISLAND

## Fw: [EXTERNAL] : Re: Visitation

From:   Carline Vilbon (vilbonc@yahoo.com)

To:     vilbonc@yahoo.com

Date:   Sunday, January 10, 2021, 05:48 PM PST

----- Forwarded Message -----
**From:** Carline Vilbon <vilbonc@yahoo.com>
**To:** SaeEung, Tia (DCYF) <tia.saeeung@dcyf.ri.gov>
**Sent:** Thursday, November 12, 2020, 10:14:02 AM PST
**Subject:** Re: [EXTERNAL] : Re: Visitation

Also,

Please save your plan so that you can address it with the judge on our next hearing date.  Especially anything to do with mental health  treatments you are suggesting for me. At that time I will make my objections in Court.
In the  meantime,  I  am open to  any  suggestions that you may have for my son

Carline  Vilbon

On Thursday, November 12, 2020, 09:53:40 AM PST, Carline Vilbon <vilbonc@yahoo.com> wrote:

I never told you that I had mental issues.
The Court hearing is still pending.  Therefore. I will be ready to address all concerns to the judge.
Please note that I have the right to due process.  And I reserve the right to a proper hearing.

Thanks,

Carline Vilbon

On Thursday, November 12, 2020, 06:41:00 AM PST, SaeEung, Tia (DCYF) <tia.saeeung@dcyf.ri.gov> wrote:

Okay I will create the plan to include services for Alex around medical and psychiatric needs, mental health service for you, and parent and child visitation program. I can create the plan and then provide to you, and you and your attorney can go over the plan and if there are any issues or concerns it can be discussed at the next court date.

Tia

**From:** Carline Vilbon <vilbonc@yahoo.com>
**Sent:** Tuesday, November 10, 2020 12:11 PM
**To:** SaeEung, Tia (DCYF) <Tia.SaeEung@dcyf.ri.gov>
**Subject:** [EXTERNAL] : Re: Visitation

I will be there on Friday 11/13 @ 2:30 PM. However I am not at the point to discuss a service plan at thin time, because we are still in a legal process, and I would like to have a court decision. before I proceed further.

Thanks,

Carline Vilbon.

On Tuesday, November 10, 2020, 07:11:39 AM PST, SaeEung, Tia (DCYF) <tia.saeeung@dcyf.ri.gov> wrote:

Hi Carline, Rumford house has stated Alex will be off quarantine on Thursday 11/12, can we schedule an in person visit for Friday 11/13 at 2:30PM?

Also can we schedule a zoom call to discuss you service plan with the Department. The goal of this meeting is to discuss with you your understanding of why the case opened and to gain you perspective on services needed for your son and yourself. I would like you input when service planning. I can schedule the zoom call for Thursday at 3PM.

Let me know if these times work for you.

**Tia Sae-Eung**

Social Case Worker II

Department of Children, Youth, and Families

530 Wood Street

Bristol, RI 02809

Office: (401)254-7029

Fax: (401)254-7068

## Re: [EXTERNAL] : Re: Visit

From:   Carline Vilbon (vilbonc@yahoo.com)

To:      susan.rivera@dcyf.ri.gov

Date:   Wednesday, December 23, 2020, 08:22 AM PST


Since this appears to be an area of concern for you,  I will hold all further visitation until a Court decision is made regarding this matter.
Therefore,  I am also canceling the virtual meeting with you and Alex.

Carline Vilbon

> On Wednesday, December 23, 2020, 07:08:14 AM PST, Rivera, Susan (DCYF) <susan.rivera@dcyf.ri.gov> wrote:
>
>
> I will call you at end of day today to review expectation for visit to support a positive visit for both you and Alex
>
>
> Thank you 😊
>
>
>
> **From:** Carline Vilbon <vilbonc@yahoo.com>
> **Sent:** Wednesday, December 23, 2020 9:45 AM
> **To:** Rivera, Susan (DCYF) <susan.rivera@dcyf.ri.gov>
> **Subject:** [EXTERNAL] : Re: Visit
>
>
> Good morning Mrs. Rivera;
>
>
> Please excuse my delayed response. I would like to confirm the virtual meeting with you and Alex on Thursday 12/24, but unfortunately, I will not be able to attend the other meeting that was planned for today.
>
>
> Thanks,
>
>
> Carline Vilbon

On Tuesday, December 22, 2020, 06:55:43 AM PST, Rivera, Susan (DCYF) <susan.rivera@dcyf.ri.gov> wrote:

Carline

I would like to set a virtual visit for you and Alex

They have 1030 am Thursday 12/24

Will this work

Also I would like to meet with you prior to that  I know the CASA SW was trying to set a meeting for us all to meet say the Wednesday before at same time 1030ish

Please reply so I can secure both of these the visit and meeting

Thank you

Susan Rivera

**From:** SaeEung, Tia (DCYF) <Tia.SaeEung@dcyf.ri.gov>
**Sent:** Wednesday, December 9, 2020 1:57 PM
**To:** Carline Vilbon <vilbonc@yahoo.com>
**Cc:** Rivera, Susan (DCYF) <susan.rivera@dcyf.ri.gov>
**Subject:** Visit

Hi Carline, would you like me to set up a virtual visit for Friday?

I have also cc'ed Susan, she will be the new case worker taking over the case.

*Tia Sae-Eung, M.S.*

Social Case Worker II

Department of Children, Youth, and Families

530 Wood Street

Bristol, RI 02809

Office: (401)254-7029

Fax: (401)254-7068

## Re: Meeting

From:  Carline Vilbon (vilbonc@yahoo.com)

To:     bparker@courts.ri.gov; susan.rivera@dcyf.ri.gov

Cc:     patrick.costello@dcyf.ri.gov

Date:  Wednesday, December 30, 2020, 08:52 AM PST

Good morning,

I appreciate you reaching out,  but due to some concerns that I have about what has been reported, I  have decided to hold the visits until I address these matters in Court.
I have explained this issue to Alex, and he understands that this precaution is for our own benefit.

You may send me your information and questions via email.

Thanks again,

Carline Vilbon

On Tuesday, December 29, 2020, 06:45:31 AM PST, Rivera, Susan (DCYF) <susan.rivera@dcyf.ri.gov> wrote:

I really feel it is important for myself and you to meet to go over case planning, visitation and discuss best ways to move forward to have Alex reunify with you at your home.

Since I am new to the case I would like to be able to meet with you to best plan with you and Alex

I also am aware of the connection Alex and you have a feel that holding off on visits until the court makes decisions is impacting Alex emotionally since he misses you.  Can we set this meeting up as well as a virtual visit up with Alex

Please let me know what works best for you

Thank You

Susan Rivera

254-7077

8296614

# Exhibit D

# Nursing

From: Rivera, Susan (DCYF) (susan.rivera@dcyf.ri.gov)

To: vilbonc@yahoo.com

Cc: bparker@courts.ri.gov

Date: Wednesday, January 6, 2021, 05:39 AM PST

Hello again Cariine

I was just asked to help support Rumford House as they have been really trying to connect with you to discuss Alex Medical status due to restraint needs his Seizures ECT>>>

They were informed you would only communicate via email However they can not send any medical information through email  they really need to speak with you directly.

We—the Department and Rumford House really would like to ensure that we keep you Fully informed as to Your son so when you get a chance please call Rumford house to speak with Nursing as to your son.

Thank you

Susan Rivera ☺

# Exhibit 5


Lifespan
*Delivering health with care.*

Rhode Island Hospital
593 Eddy Street
Providence RI 02903-4923

Vilbon, Altamir A
MRN: 10018451898, DOB: 2/1/2007, Sex: M
Acct #: 1007869834
Adm: 8/24/2020, D/C: 10/29/2020

**08/24/2020 - Admission (Discharged) in Hasbro Children's Hospital 6 Green (continued)**

Clinical Notes (group 11 of 32) (continued)

Peds: face to face exams while he is restrained are done.

Milieu report: escalating when he does not know what the plan is.

In session:
Today, Alex talked about feeling "crappy" and did not want to elaborate. This writer and Dr Perkel explained to Alex that the plans of discharge fell through but did not give Alex all of the information about mom not having signed the paperwork, then not wanting to take him, then wanting to transfer him to another hospital...
He is aware that he won't be able to call/receive calls from mom for now. We explained to him that his team is still supportive of him and would treat him to his best interest.
Alex got upset and left the room.

Of note, I concur with the content of Dr Perkel and Barron's notes from today, and was present with them. Mom wanted to sign Alex AMA or sign the ITL, during a discharge process, saying that she is not ok with the reason for admission being written as parent child conflict.
The primary team was working with mom to explain to her the rationale as well as removed that from his chart, and tried to find ways for mom to be able to leave with Alex without interpersonal conflict, but mom refused to take Alex and would leave the room then come back.
She also requested to transfer him to another psychiatric hospital, which would not be appropriate since he was ready for discharge (to go home) and we did not think that he has the need to be on an inpatient unit.
Alex' escalation in behaviors is explained by him being at chronic risk of being disinhibited and impulsive (due to brain injury) in combination with difficulty tolerating ambiguity, and him being unable to go home when that was the plan. His feelings of upsetness (which he calls "crappy") started after he learned his plan is not going to be completed and mom giving him (mis)information that the team is attacking her or not allowing her to leave.

ROS:
Psych-see above;
Neuro-no reported headaches, dizziness or weakness;
A full ROS is otherwise unremarkable except for issues documented in this note.

Restraints: none

## Medications
Scheduled Meds:

| | | | |
|---|---|---|---|
| • cholecalciferol (vitamin D3) | 3,000 Units | Oral | Once Daily |
| • cloBAZam | 30 mg | Oral | Every Morning |
| • cloBAZam | 40 mg | Oral | Every Evening |
| • divalproex | 750 mg | Oral | Q12H SCH |
| • escitalopram oxalate | 10 mg | Oral | Once Daily |
| • lacosamide | 250 mg | Oral | 2 times daily |

PRN Meds:.acetaminophen, diphenhydrAMINE **OR** diphenhydrAMINE, LORazepam, LORazepam **OR**